IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 05-21251 CIV- ALTONAGA/BANDSTRA

MANUEL FIGUEROA, and DIXIE
GARNER, individually and on behalf of
those similarly situated,

       Plaintiffs,

v.

SHARPER IMAGE CORP., a Delaware
Corporation,

       Defendant.

_____/

## INTERVENOR JOHN POTTER'S OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

PAGE(S)

I.  THE SETTLEMENT IS NOT FAIR, REASONABLE, OR ADEQUATE .......................... 1

  A.  Applicable Legal Standards .................................................. 1

  B.  The Settlement Went To The Lowest Bidder .......................................... 2

    1.  Figueroa Was in a Weak Position Vis-à-vis the More Advanced California Actions.................................... 3

    2.  The Only Real Consideration for the Settlement is the Settling Parties' Ability to Persuade This Court to Enjoin the California Actions............................................. 5

    3.  Sharper Image and Florida Plaintiffs Have Refused to Provide Any Evidence Concerning the Course of Negotiations ...................................... 5

  C.  Plaintiffs' Substantive Claims Are Far Stronger Than The Settlement Achieved Would Suggest.................................... 5

    1.  Sharper Image's Supposed Scientific Basis for Its Claims of Efficacy Has Already Been Discredited ................................ 6

    2.  The Plaintiffs Had A Strong Case For Showing That Sharper Image Misrepresented The Amount of Ozone Its Products Generate ......................................... 7

  D.  The Settlement Is Inadequate Because It Offers No Meaningful Relief To Class Members.................................... 8

    1.  A $19 Coupon For Only Sharper Image's Proprietary Products is Unreasonable.................................... 9

    2.  The Coupon is Unreasonably Limited to One Per Household ......................................... 10

    3.  Sharper Image Will Profit While Class Members Obtain No Relief From the Failings of the Product.......................... 10

    4.  The Coupon is Not Transferable.................................... 11

    5.  The Coupon Has No Face Value Guaranty.................................... 11

    6.  The Coupons Become Worthless Quickly.................................... 12

    7.  The OzoneGuard Purchase Provision Is Unreasonable .............................. 12

      a.  Class Members Should Not Be Forced to Purchase a Safety Device.................................... 12

      b.  No OzoneGuard is Offered, at Any Price, For Certain Models of the Product.................................... 12

      c.  The Settling Parties Have Submitted No Evidence on Which the Court Can Find That the Price is Reasonable .................................... 13

    8.  The Agreement to Refrain From Certain Advertising is Toothless and has no Value .................................... 13

      a.  Any Supposed Constraints on Sharper Image's Future Conduct Are a Sham.................................... 14

      b.  Sharper Image Has Already Stopped Doing What it is Agreeing Not to Do .................................... 14

E.    The Relatively Undeveloped State of the Litigation Demonstrates the Inadequacy of the Settlement ........................................................ 15

F.    The Settlement Is Procedurally Unfair And Unreasonable ........................ 15

     1.    The Claims Procedure is Excessively Burdensome and Appears Designed to Discourage the Submission of Claims ...................... 15

     2.    The Claims Procedure is Unnecessarily Cumbersome and Difficult ............................................................................................ 16

     3.    Sharper Image Could Have Provided An OzoneGuard or Certificate for Redemption Automatically At Least to Its Direct Purchasers, ........................................................................ 17

     4.    The Settling Parties Have Provided No Evidence of an Expected Redemption Rate ...................................................... 17

     5.    The Settlement's Notice Provisions Are Constitutionally Inadequate ............................................................................ 18

     6.    The notice was confusing to class members ................................ 20

     7.    The Requirements for Filing Objections Are Unduly Burdensome to Class Members ......................................................... 21

     8.    The Objection Requirements Fall Especially Harshly on Parties Not Represented by Counsel ............................................ 23

     9.    The Requirement that All Attorneys' Fees Motions be Filed by the Opt-Out Date is Also Unreasonable .................................... 24

     10.    The Deadline for The Settling Parties to Respond to Objections is Unfair and Unreasonable ........................................ 25

     11.    Class Members Should Not Be Encouraged to Stay In Or Opt Out .......................................................................................... 25

II.    THE SETTLEMENT CLASS CANNOT BE CERTIFIED .............................. 26

   A.    Plaintiffs Cannot Establish Adequacy of Representation .......................... 26

     1.    The Class Representatives are Inadequate ..................................... 27

       a.    The Class Representatives Agreed to Terms Detrimental to the Interests of the Class ......................... 27

       b.    Garner is Completely Untested as a Plaintiff and Has Done Nothing to Demonstrate Her Ability to Protect the Class .................................................... 28

     2.    The Provisionally Appointed Class Counsel Are Inadequate ...................... 28

       a.    Counsel Placed The Interests of Class Members in Jeopardy by Agreeing to Oppressive Terms ................................... 28

       b.    The Settlement Cannot Be Approved Because Class Counsel Failed To Properly Represent The Interest Of The Class .............................................................. 29

   B.    Common Questions of Law Do Not Predominate and Class Certification in This Case is Not Superior to the Alternatives ...................... 31

   C.    Inherent Conflicts Among Settlement Class Members Preclude Certification ............................................................................................ 32

III.    INTERVENTOR'S STATEMENTS IN COMPLIANCE WITH THE
        TERMS OF THE COURT'S PRELIMINARY APPROVAL ORDER .............................. 34

        A.    Documents Potter Intends To Rely Upon At the Fairness Hearing ......................... 34

        B.    Witnesses Whom Intervenor Intends to Present by Live Testimony,
              Oral Deposition Testimony, or Affidavit ................................................................. 35

        C.    Personal or Financial Interest of the Objector or His Counsel ................................ 35

        D.    Whether The Objector Intends to Appear at the Fairness Hearing ......................... 35

# TABLE OF AUTHORITIES

PAGE(S)

## Cases

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ..................................................... 18, 26, 32, 34

*Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) ...................................................... passim

*Besinga v. United States*, 923 F.2d 133 (9th Cir. 1991) ............................................................ 19

*Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684  (D.Minn. 1994) ..................... 9, 11, 12, 17

*Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ............................................ 18

*Gottlieb v. Wiles*, 11 F. 3d 1004  (10th Cir. 1993)....................................................................... 20

*Greenfield v Villager Industries, Inc.*, 483 F2d 824 (3rd Cir. 1973) ...................................... 19, 20

*Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F.Supp. 419 (S.D.Fla. 1987) ........... 29

*Holmes v. Continental Can Co.*, 706 F.2d 1144  (11th Cir. 1983) ............................................... 33

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418
  F.3d 277 (3d Cir. 2005)............................................................................................................ 5

*In re Diet Drugs Prod. Liab. Litig.*, 226 F.R.D. 498 (E.D. Pa. 2005) ......................................... 18

*In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297 (D. Ga. 1993)...................... 12, 19, 24

*In re General Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
  (3rd Cir. 1995) ................................................................................................................. passim

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) .................................. 8

*In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329 (D. Ga. 2000) .......... 10, 11

*In re Traffic Executive Ass'n -- Eastern Railroad*, 627 F.2d 631 (2d. Cir. 1980).......................... 9

*International Union of Electronic, Electrical, Salaried, Mach., and Furniture Workers  v. Unisys
  Corp.*, 155 F.R.D. 41  (E.D.N.Y. 1994)................................................................................... 27

*Johnson v. General Motors Corp.*, 598 F.2d 432 (5th Cir. 1979) ............................................... 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ........ 32

*Kleiner v. First Nat'l Bank*, 102 F.R.D. 754  (D. Ga. 1983)................................................... 19, 25

*Leverso v. Southtrust Bank*, 18 F.3d 1527 (11th Cir. 1994) .......................................................... 1

*Mars Steel v. Continental Illinois National Bank & Trust Co. of Chicago*, 834 F.2d 677 (7th Cir.

   1987) ................................................................................................................ 2

*Meijer, Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 (D. Pa. 2006) ................................ 18

*Mogell v. Franklin (In re Westinghouse Secs. Litig.)*, 219 F. Supp. 2d 657 (D. Pa. 2002) ......... 24

*Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 94 L. Ed. 865,

   70 S. Ct. 652 (1950) ................................................................................ 21, 25

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615  (9th Cir. 1982).: ........................ 1

*Parker v. Time Warner Entm't Co., L.P.*, 239 F.R.D. 318 (D.N.Y. 2007) .............................. 19, 33

*Phillips Petroleum v. Shutts*, 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628  (1985) .............. 31

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999) ........................................ 2

*Premix-Marbletite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F.Supp.2d 1348 (S.D. Fla. 2001). . 32

*Prudential Ins. Co. of America v. Anodyne, Inc.*, 365 F.Supp.2d 1232 (S.D.Fla. 2005) ............. 29

*Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) ........................................................ 3

*Sondel v. Northwest Airlines*, 56 F.3d 934  (8th Cir. 1995) ......................................................... 25

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) ...................................................... 17

*Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782 (D. La. 1977) .............................................. 19

*Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485  (D. Cal. 2006) ............................................ 25

*Weinberger v. Kendrick*, 698 F.2d 61  (2d Cir. 1982) ................................................................... 2

*White v. Auerbach*, 500 F.2d 822  (2d Cir. 1974) ........................................................................ 24

**Statutes**

28 U.S.C. §1712(3) ....................................................................................................................... 17

**Other Authorities**

Hillebrand & Torrence, *Claims Procedures In Large Consumer Class Actions and Equitable*

   *Distribution Of Benefits*, 28 Santa Clara L. Rev. 747, 752 (1988) ........................................ 17

Manual for Complex Litigation 2d § 30.45 (3d Ed. 1995) .............................................................. 2

Manual for Complex Litigation, Fourth § 21.33 (2004 ) ............................................................... 25

**Rules**

Fed. R. Civ. P. 23(c)(2) .............................................................................................................. 18

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 20

I.      THE SETTLEMENT IS NOT FAIR, REASONABLE, OR ADEQUATE

The central issue this Court must determine is whether the proposed settlement in this case is fair, reasonable and adequate. As explained below, this proposed settlement misses by a mile. The proposal is both procedurally unfair and substantively inadequate. Furthermore, the proposed settlement is the product of a transaction in which class counsel has created inherent and unwaiveable conflicts of interest.

In determining whether to finally approve a class action settlement, the Eleventh Circuit has instructed District Courts to ask:  a) whether there was fraud or collusion in arriving at the settlement and b) whether the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citations omitted). As shown below, the settlement does not pass muster under these factors.

A.      **Applicable Legal Standards**

The basic prerequisite to approval of a class action settlement is a judicial determination that the settlement is "fair, adequate and reasonable." *Bennett v. Behring Corp., supra,* 737 F.2d at 986; *Leverso v. Southtrust Bank,* 18 F.3d 1527, 1530 (11th Cir. 1994). The purpose of the requirement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983). The burden of demonstrating that the settlement is "fair, reasonable and adequate " is on the proponent(s) of the settlement. *See, e.g., In re General Motors Corp. Pick Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3rd Cir. 1995), *cert. den.*, 516 U.S. 824 (1995).

The Court's duty to scrutinize a settlement is heightened where, as here, the settlement is negotiated before a ruling on class certification. *Acosta v. Trans Union, LLC,* 240 F.R.D. 564,

1

584 (D. Cal. 2007) ("Federal courts are inherently skeptical of pre-certification settlements, precisely because such settlements tend to be reached quickly before the plaintiffs' counsel has had the benefit of the discovery necessary to make an informed evaluation of the case and, accordingly, to strike a fair and adequate settlement."); *see also, Mars Steel v. Continental Illinois National Bank & Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., supra,* 55 F.3d 788; *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 113 (S.D.N.Y. 1999) ("An early settlement will find the court and class counsel less informed than if substantial discovery had occurred. As a result, the court will find it more difficult to access the strengths and weaknesses of the parties' claims and defenses, determine the appropriate membership of the class, and consider how class members will benefit from settlement.") (quoting Manual for Complex Litigation 2d § 30.45 (3d Ed. 1995)). As the Second Circuit stated in *Weinberger*:

> [W]e emphasize that we are permitting, not requiring, use of [precertification settlement], and also underscore that ....district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care. This is necessary in order to meet the concerns, noted in the Manual, regarding the possibilities of collusion or of undue pressure by the defendants on would-be class representatives. Accordingly, we will demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it in such cases than where a class has been certified and class representatives have been recognized at an earlier date.

*Id.* at 73.

**B.     The Settlement Went To The Lowest Bidder**

The first part of the *Bennett* standard is whether the settlement was the result of fraud or collusion.   A district court must be on alert for a settlement made under questionable circumstances, as the Seventh Circuit observed in *Reynolds v. Benefit Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002) (citations omitted): "Although there is no proof that the settlement was actually collusive in the reverse-auction sense[1], the circumstances demanded closer scrutiny than the

---

[1] A "reverse auction" is " the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. ... The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for

2

district judge gave it. He painted with too broad a brush, substituting intuition for the evidence and careful analysis that a case of this magnitude, and a settlement proposal of such questionable antecedents and circumstances, required." *Reynolds v. Benefit Nat'l Bank*, 288 F.3d at 283.

Here, the circumstances strongly suggest that the settlement was reached principally to allow Sharper Image to avoid confrontation with a stronger adversary elsewhere, and that plaintiffs negotiated a handsome financial reward in return for a significant underbid to *Potter v. Sharper Image Corporation*, San Francisco County Superior Court Case No. CGC-03-426350, and consolidated actions (the "California Actions.").

### 1.   Figueroa Was in a Weak Position Vis-à-vis the More Advanced California Actions

Sharper Image settled with Figueroa during a period that the plaintiffs in the California Actions, representing a certified national class, were in the last stage before trial. The California Actions contrasted sharply with the far more narrowly litigated, less developed *Figueroa* litigation.

The first of the California Actions was filed on October 3, 2003 – more than eighteen months before plaintiff Figueroa filed his complaint  See, Affidavit of R. Duane Westrup ("Westrup Affidavit") 4 and corresponding exhibits [D.E. 219].  The parties engaged in extensive merits discovery as well as discovery related to class certification.

The three California actions were consolidated in San Francisco, an especially appropriate venue for this action.[2] After considerable discovery, extensive briefing, and oral argument, the California Superior Court granted plaintiffs' motion for certification of a nationwide class. Westrup Affidavit, Ex. 5. [D.E. 219].  Pursuant to the Superior Court's orders,

---

generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line--the sum of the settlement and the attorneys' fees--and not the allocation of money between the two categories of expense." *Reynolds*, 288 F.3d at 282.

[2] Defendant Sharper Image Corporation ("Sharper Image") is headquartered in San Francisco; the Ionic Breeze was invented and designed in California; it was tested at facilities in Novato and Rohnert Park, California; Sharper Image creates its print, radio, catalog, and internet advertising of the Ionic Breeze in San Francisco, California and its television advertisements in Los Angeles, California; the internet unit, which maintains the e-commerce website and handles email orders, is also located in San Francisco; and, finally, Sharper Image receives its orders for the Ionic Breeze at its offices in San Francisco and provides its San Francisco address to customers for communications. Westrup Affidavit, Exhibit 5 at 13. [D.E. 219]

notice was disseminated to consumers nationwide at a cost to plaintiffs of over $275,000. Westrup Affidavit, 6 [D.E. 219]  The last day to opt out of the class was 45 days from the mailing date of the notice – or November 14, 2006. *Id.*  The Court had set the case for a trial by jury for April 16, 2007.

Plaintiff Figueroa did not file his action in the Southern District of Florida until May 6, 2005.  There was no particular reason to file the case in a forum as distant as possible from the events at issue in this case.  As Sharper Image established early in the litigation, the product was not manufactured in Florida; no employees or other witnesses are located in Florida; the product was not developed here; not a single advertising piece was created here.  Affidavit of Robert Schultz, ¶¶ 4-10. [D.E.16]

Early in the litigation, plaintiff Figueroa sought discovery relating to the merits as well as discovery regarding class certification issues.  The Court, after hearing, entered an order precluding discovery on the merits.  [D.E. 46]  Despite plaintiff's efforts, this order was enforced again [D.E. 77] and again [D.E. 109] and again [D.E. 131].

Figueroa fruitlessly attempted to distinguish his later filed-action from the California Actions.  He named the Ionic Breeze patent holder, Zenion Industries, as a defendant and attempted to assert a cause of action based upon the Magnuson-Moss Act.  But Zenion was dismissed because its connections were with the state of California not Florida [D.E. 148], and the Magnuson-Moss claim was dismissed voluntarily because plaintiffs could not proffer the required 100 individual plaintiffs.  [D.E. 120]

Figueroa's motion for class certification was also fatally threatened by the California Actions. Figueroa had serious cause for concern, because he could not show (as discussed in Section II, below) that common questions of law predominate or that his action is the superior vehicle for resolving the claims of the class.  As the parties admit, settlement negotiations thus began to take off just a few days before the Court was to hear argument on class certification. Joint Motion for Preliminary Approval at 3. [D.E. 212]  Against this background emerged a settlement consisting of scanty relief and outsized attorneys' fees.

### 2.   The Only Real Consideration for the Settlement is the Settling Parties' Ability to Persuade This Court to Enjoin the California Actions

Also supporting the conclusion that the settlement was the product of a reverse auction is that Sharper Image made an injunction prohibiting the California Actions from going forward, an express condition of, and consideration for, the settlement. [D.E.242-2, ¶¶4.3, 29, 30.]

Sharper Image's reluctance to go forward in the California Actions was so powerful that it prompted an attempt to settle with the weak link in Florida. Sharper Image found a compliant partner in Figueroa. Figueroa rejected the alliance he had been offered with the strength of the California Actions, where the plaintiffs together could have leveraged a global settlement that would result in real benefit to the class, in favor of an incentive award, fees for his counsel and the paltry settlement he presents to this court.

### 3.   Sharper Image and Florida Plaintiffs Have Refused to Provide Any Evidence Concerning the Course of Negotiations

Sharper Image and plaintiffs have refused to provide any discovery relating to the negotiation of the settlement, despite having promised to do so when seeking preliminary approval of the settlement. Transcript of January 23, 2007 hearing at 71 [D.E. 247]. Figueroa and Garner have also refused to provide their counsel's timesheets to demonstrate how and when they have earned the $1.8 million fee for which they intend to apply.[3] [D.E. 283, Exh. 5] The Court, which has now ordered the settling parties to comply with this discovery, would be well justified in inferring that the negotiations do not bear the scrutiny of an objector.

### C.   Plaintiffs' Substantive Claims Are Far Stronger Than The Settlement Achieved Would Suggest

One of the key factors the Court must consider is the likelihood of success at trial. *Bennett, supra,* 737 F.2d at 986. Here, the terms of the settlement are a distinct mismatch to the

---

[3] Timesheets and correspondence concerning the negotiations would, among other things, shed light on when the attorney fees were negotiated. Without contemporaneous evidence of what was actually done, the mere claim by the settling parties that the attorneys' fee was agreed upon only after the settlement in chief had been negotiated, is insufficient to support the assertion. *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,* 418 F.3d 277, 308 (3d Cir. 2005); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig, supra,* 55 F.3d at 804.

quality of the underlying claims.  The substantive claims against Sharper Image are strong enough to have merited a much better agreement.

### 1.  Sharper Image's Supposed Scientific Basis for Its Claims of Efficacy Has Already Been Discredited

The claims that the product does not work as advertised have already been vetted in another federal court, and Sharper Image came out the loser.  When *Consumer Reports* published articles critical of the Ionic Breeze's performance, and disputed Sharper Image's supposed "scientific" basis for its advertising claims, Sharper Image sued the magazine in the Northern District of California for trade libel.  *Sharper Image Corporation v. Consumers Union of United States,* U.S. District Court for the Northern District of California, No. 03-4094 MMC.  *Consumer Reports* made an anti-SLAPP motion to strike, putting Sharper Image on the spot to show that there would be a probability that it would prevail at trial.

The District Court concluded that Sharper Image had no probability of prevailing at trial. Sharper Image would not be able to show that the magazine's statements that the Ionic Breeze "barely worked" and was "unimpressive" in its air cleaning performance, or that it was "ineffective" were false.  Rather, the District Court said, Sharper Image had tried but failed to show that the testing protocol employed by the magazine was inapplicable to the Ionic Breeze product; that even if the testing protocol was "applicable," that it was incorrectly applied; that *Consumer Reports'* own tests demonstrated that the Ionic Breeze was effective in removing airborne particles; or that Sharper Image's own testing showed that the Ionic Breeze was an effective air cleaner.  The Court rejected Sharper Image's arguments and evidence as to each of those points.  Order Granting Consumers Union's Special Motion to Strike Amended Complaint dated November 10, 2004 [D.E. 232].[4]

The Court's discussion of Sharper Image's own testing is particularly important here. Sharper Image cited testing performed by three of its hired experts, Drs. Platts-Mills, Campbell and Burge, CU Order at 23-24, to support its contention that the Ionic Breeze is effective at removing "a significant percentage of particles, particularly pollen and allergens."  The Court

---

[4] The Attorneys General have attached this Order ( the "CU Order") as an exhibit to their *amicus* brief, as Exhibit F. [D.E. 300-7]

concluded that *Consumer Reports*'s experts had shown that Sharper Image's testing was irrelevant, used questionable methodology, or in fact bore out *Consumer Reports'* conclusions. CU Order at 26.

These conclusions are important for this case, because Sharper Image has used, quoted and relied upon these very three experts' reports and studies – those that the District Court believed Consumers Union had basically discredited -- in its advertising for the Ionic Breeze. Suffice it to say[5] that the support is weak and the claims for false advertising strong --- too strong to have been thrown away in settlement as plaintiffs did here.

### 2. The Plaintiffs Had A Strong Case For Showing That Sharper Image Misrepresented The Amount of Ozone Its Products Generate

Ionic Breeze products operate by electronic precipitation.  Ozone is a byproduct of this process. The plaintiffs here allege that the Ionic Breeze devices emit hazardous levels of ozone. These claims are strong.  In May, 2005, *Consumer Reports* published another evaluation of the Ionic Breeze products, this time focusing on the ozone that ionic air cleaners produce as a byproduct of their operation.  The magazine discussed in depth the hazards of excessive levels of indoor ozone, particularly for asthma and allergy sufferers (to whom Sharper Image particularly markets its product).  The magazine recommended avoiding poorly performing ionic air cleaners, particularly ones emitting relatively high levels of ozone.  The Ionic Breeze product fell directly into this category, earning a "not recommended" rating.  *See,* "Ratings, Room air cleaners," *Consumer Reports*, (May 2005),  *http://www.consumerreports.org/cro/appliances/ionizing-air-cleaners-505/ratings/index.htm;* "New Concerns About Ionizing Air Cleaners," *Consumer Reports*, (May 2005),  *http://www.consumerreports.org/cro/appliances/ionizing-air-cleaners-505/overview/index.htm.*

Intervenor himself cited independent testing in the California Action that showed that the Ionic Breeze GP, one of the models at issue in both actions, emitted ozone at levels that Sharper

---

[5] As discussed below, in Section III.A, Potter is subject to a protective order limiting use of documents produced in the California Actions which would elucidate this assertion.  However, Potter expects by the time of Final Approval to be able to more fully discuss the issue of the scientific support for Sharper Image's advertising claims.

Image itself admits would exceed US safety standards -- more than 50 ppb.  [D.E. 219, Exh. 219-3, ¶ 21.]  Intervenor, again constrained by the protective order in his case, will seek the Court's permission to submit documents produced in litigation from Sharper Image that would also bear out the plaintiffs' claims about ozone in this case.

### D.   The Settlement Is Inadequate Because It Offers No Meaningful Relief To Class Members

The second and third questions to be answered under *Bennett* are "the range of possible recovery" and "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable."   The settlement in this case is well below the range of recovery that would be fair, adequate or reasonable, because it is worth essentially nothing.  Considering that the range of possible recovery was a full refund of the purchase price to each customer, the settlement sells out the class's claims for an absurdly low price.

As a preliminary matter, the parties' proposed settlement consists essentially of non-cash, or "coupon" relief.  Under the Class Action Fairness Action Act of 2005, such settlements are subject to specific rules and close scrutiny, because they are so prone to be abused.  Because the Attorneys General have thoroughly and excellently described the requirements and intent of CAFA with respect to coupon settlements in their *amicus* brief, Intervenor will not repeat it here.

Even before CAFA, courts have said that such a settlement "merits particularly close scrutiny to determine whether it represents a verifiably fair and adequate settlement of plaintiffs' claims against the [defendants]." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 662 (E.D. Va. 2001); see also, *Acosta, supra,* 240 F.R.D. at 582.   It goes without saying that courts have refused to approve settlements where the consideration provided by the settlement was not adequate.  *See, e.g., In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig., supra,* 55 F.3d at 807 (District Court abused its discretion in concluding that $1,000 coupon settlement was fair, adequate, and reasonable*); Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 692 (D.Minn. 1994) (coupons settlement disapproved*); In re Traffic Executive Ass'n -- Eastern Railroad*, 627 F.2d 631 (2d. Cir. 1980) (rejecting inadequate cash settlement). This settlement is a paradigm example of the vices of coupon-only settlements.

1.   **A $19 Coupon For Only Sharper Image's Proprietary Products is Unreasonable**

The settlement offers a $19 coupon that may be applied only to "Sharper Image branded products," i.e. products sold under the Sharper Image mark.

"For Plaintiffs to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assessed its strengths and value. Similarly, for a court to approve a proposed settlement, [t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to 'intelligently make . . . an appraisal' of the settlement. ... In considering a proposed settlement, a court therefore bears an obligation to evaluate the scope and effectiveness the investigation plaintiffs' counsel conducted prior to reaching an agreement. No one can tell whether a compromise found to be 'fair' might not have been 'fairer' had the negotiating (attorney) possessed better information or been animated by undivided loyalty to the cause of the class." *Acosta v. Trans Union, LLC, supra,* 240 F.R.D. at 583 (citations omitted).

Plaintiffs and Sharper Image have provided no background or analysis to explain why a $19 limited-use merchandise discount is sufficient to provide class members with adequate relief for their purchases of air purifiers that cost hundreds of dollars, didn't work and created a hazard by producing ozone indoors. Plaintiffs say nothing at all in the Motion for Preliminary Approval to justify or explain how they arrived at this aspect of the settlement.

There are currently only a few Sharper-Image branded items currently available for under $19, such as the "Sharper Image Personal Mister Fan," which is marked down from $19.95 to $12.95.[6] Virtually every Sharper Image branded item retails for $19.95 or more. The Ionic Breeze products themselves, however, retail for hundred of dollars.[7]

On June 18, 2007, Sharper Image filed a Form 10-Q quarterly report with the Securities and Exchange Commission. In that report, Sharper Image states that "Sales of Sharper Image branded products decreased to approximately 44.2% of total revenues in the first quarter of fiscal 2007 from approximately 71.2% in the same period in fiscal 2006." Affidavit of Jennifer S.

---

[6] http://www.sharperimage.com/us/en/catalog/product/sku__OC910.
[7] http://www.sharperimage.com/us/en/catalog/categoryview/catid__101.

9

Rosenberg in Support of Objections to Settlement, Exhibit A. In other words, Sharper Image and plaintiffs have come up with an agreement that offers a minuscule discount only on products that consumers do not want.[8]

### 2.    The Coupon is Unreasonably Limited to One Per Household

The settlement agreement provides that the $19 coupon is limited to one per household. [D.E. 242-2, ¶8.2.7]  This provision is unfair on its face. Sharper Image routinely advertised, and continues to advertise as of the date of these objections, a "buy two, get one half off" promotion. See, http://www.sharperimage.com/us/en/landpage/proplus.jhtml (as of June 21, 2007).  As an example, Philip Rittenhouse, one of the named plaintiffs in the California Actions, spent over eleven hundred dollars for the four Ionic Breeze products he purchased.  Rosenberg Aff., Exhibit B.  The one-per-household limitation is not consistent with either Sharper Image's business practices or the experience of class members.

The one-coupon limitation necessarily precludes aggregation of the coupons as well.  In granting approval of the cash and coupon settlement in *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1335 (D. Ga. 2000), the court noted that "aggregation of coupons or merchandise is another value enhancing feature of the present program."  *In re Motorsports,* 112 F. Supp. 2d at 1337.  As if to intentionally disqualify the present settlement, the agreement here provides that the "Merchandise Credits shall not be subject to aggregation."  [D.E. 242-2 ¶8.2.5] The settlement's ban on aggregation also weighs against approval of this coupon settlement.

### 3.    Sharper Image Will Profit While Class Members Obtain No Relief From the Failings of the Product

The *Figueroa* complaint sought compensatory damages for having purchased a product that does not work, and disgorgement of the sale proceeds as an equitable remedy.  [D.E. 27] However, the structure of the settlement virtually ensures that Sharper Image, far from disgorging the purchase price, will profit from every coupon redemption, because coupons can,

---

[8] Nor may the coupon be applied to shipping charges.  It may only be applied to merchandise. Thus, if a consumer does not live within traveling distance of a Sharper Image store, he or she will have to pay shipping charges to redeem the coupon at all.

as a practical matter, only be redeemed as a discount on a more expensive item. This outcome is the opposite of what the settlement should be achieving: the major beneficiary is not the class, but the defendant. "Thus, rather than providing substantial value to the class, the certificate settlement might be little more than a sales promotion." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., supra,* 55 F.3d at 808. Furthermore, a coupon settlement in which the only relief offered must be redeemed from the defendant, unfairly eliminates consumer choice and forces the consumer back into business with the entity that cheated it in the first place.

### 4.     The Coupon is Not Transferable

In *In re Motorsports Merchandise Antitrust Litig., supra,* 112 F. Supp. 2d 1329, the court reviewed a proposed settlement consisting of $ 5.6 million in cash and $ 5.7 million in coupons. The Court noted that certain features of the coupon portion of the settlement "enhance[d] the value of the total settlement" weighing in favor of the settlement's approval. *Id at* 1335. One such factor was the fact that the coupons offered were fully transferable. *Id.*

Here, there is no such provision for the "merchandise credit" offered to members of the class. [D.E. 242-2 ¶8.2]  In fact, to be *eligible* for the "Settlement Package," a class member must be an identifiable purchaser, register as a settlement class member and submit a claim form. *Id.,* ¶12.1. That these low-value coupons, available only for Sharper Image branded products, are not even transferable to others, diminishes any benefit they might otherwise have.

### 5.     The Coupon Has No Face Value Guaranty

Another factor identified in *In re Motorsports, supra,* was whether the defendant "agreed to continue issuing coupons until the face value of each of the settlements is reached in redemptions." 112 F. Supp. 2d at 1336. In such a situation, the courts can use this payout figure as a "benchmark" to evaluate the settlement's value. See, *Buchet v. ITT Consumer Fin. Corp., supra,* 845 F. Supp. at 696.  The lack of such a "minimum payout" has caused courts to disapprove of a proposed settlement. *Id.*

Here, there is no guaranteed minimum payout. The certificates themselves "may not be redeemed for cash under any circumstances." [D.E. 242-2, ¶8.2.4] The absence of a guaranteed

payout alone may lead the Court to conclude that that the value offered to the class by the instant coupons "is simply too tenuous and speculative in nature." *Buchet, supra*, 845 F. Supp. at 692.

### 6.    The Coupons Become Worthless Quickly

Finally, some courts have approved coupon settlements where, in addition to other factors, the coupons have a long life. See e.g., *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 321 (D. Ga. 1993) (approving proposed settlement with three year redemption period). Here, the Merchandise Credit is valid for only one year. [D.E. 242-2, ¶8.2.3] The ability to purchase an OzoneGuard only stays in effect for 180 days. [D.E. 242-2, ¶8.3.3] That the coupons become worthless quickly is another negative factor militating against approval.

### 7.    The OzoneGuard Purchase Provision Is Unreasonable

This settlement is notable among class actions in that under it, class members pay and defendant profits. The second component of purported relief under the settlement agreement is that class members will be offered the opportunity to buy an "OzoneGuard" carbon filter from Sharper Image at the price of $7.00. The Court simply cannot conclude there is any benefit to the class in this supposed "relief."

#### a.    *Class Members Should Not Be Forced to Purchase a Safety Device*

The OzoneGuard is intended to change the hazardous ozone emitted from the Ionic Breeze into oxygen. Plaintiffs have offered no reason that this device, intended for consumer safety, should cost class members anything. According to plaintiffs' complaint, class members purchased a product that emits excessive amounts of hazardous gas. If a safety improvement is available, it should be made available for free.

To add insult to injury, if the OzoneGuard is not available at a Sharper Image store, or a customer does not have access to a store, it must be ordered and a shipping fee applies. [D.E. 242.2, ¶8.3.5] The $19 coupon, as mentioned above, cannot be applied to this shipping fee. [D.E. 242-2, ¶8.2.6]

#### b.    *No OzoneGuard is Offered, at Any Price, For Certain Models of the Product*

12

The OzoneGuard is offered only for "floor models" of the Ionic Breeze, i.e. full-sized models that sit on the floor. Yet the plaintiffs agreed as part of their settlement to expand the class definition to include every model of Ionic Breeze. [D.E. 242-2, ¶1.22] Many of these are not floor models and will not be offered any OzoneGuard retrofit. Class members who own these models will obtain no benefit at all from this aspect of the settlement. For example, Sharper Image sells a "personal Ionic Breeze" that the user hangs around the neck. No OzoneGuard option is being offered for this model, so that owners who continue to use it will have ozone coming out directly below their noses with no safety measure offered at any price.

        c.     *The Settling Parties Have Submitted No Evidence on Which the Court Can Find That the Price is Reasonable*

Plaintiffs and Sharper Image have offered no evidence to the Court explaining why $7 is an appropriate price for the OzoneGuard. Although Sharper Image claims that the item has retailed for $39.95, the parties offer no evidence of what it *costs* Sharper Image to manufacture. Intervenor believes that $7 is not only far above Sharper Image's cost, resulting in a profit to Sharper Image on every unit sold during the six-month period they will be offered, but that Sharper Image has discounted these units heavily during the life of the product so that $7 may actually be an increase in the price charged. Intervenor has asked for, and just been granted, discovery on this point, and will advise the Court of his findings after discovery is completed.

**8.    The Agreement to Refrain From Certain Advertising is Toothless and has no Value**

The *Figueroa* complaint, like the California Actions, was partly founded on equitable causes of action, on the basis of which the plaintiff prayed for an injunction to restrain Sharper Image's false advertising practices. [D.E. 27]

Plaintiffs had a strong case for obtaining an injunction to restrain Sharper Image's advertising. For example, Sharper Image consistently claims in its advertising that the Ionic Breeze "circulates" or "moves" air. Rosenberg Aff., Exh. C. However, measuring the frequency of air exchanges in a room, the Ionic Breeze is as *Consumer Reports* put it, hardly better than gravity. "Air Cleaners, The Truth Behind the Accolades," *Consumer Reports,* May, 2005,

available online at http://www.consumerreports.org/cro/appliances/ionizing-air-cleaners-505/air-cleaners-the-truth-behind-the-accolades/index.htm.   Sharper Image quotes from or cites to supposed scientific studies supporting the efficacy of its product, but those studies were debunked in the *Consumer Reports* litigation, as discussed above.   Under these circumstances, plaintiffs should have at the very least been able to make a convincing case to the Court for an injunction curbing Sharper Image's advertising excesses.   Instead, plaintiffs folded and gave up on any injunction whatsoever, settling for Sharper Image's agreement to stop doing what it never did or has not done for years.

         *a.*      *Any Supposed Constraints on Sharper Image's Future Conduct Are a Sham*

Instead of an injunction, the settlement agreement provides instead for "Modifications to Ionic Breeze Advertisements and Independent Testing" but states explicitly, "The … modifications are expressly conditioned upon such changes in advertising being done solely pursuant to this Agreement and not as part of any type of injunction." [D.E. 242-2, §8.4]

Plaintiffs bargained away the Court's and class members' power to enforce the agreement by order to show cause and/or contempt, or even to pursue an action for breach of contract. Instead, plaintiffs agreed to a procedure under which class counsel or the class representatives alone may notify Sharper Image of breach of these provisions of the settlement agreement, Sharper Image will have up to 90 days to cure or challenge the breach, and then the parties will have thirty days to submit the dispute by briefs to the Court for "final determination and ruling," apparently waiving the right to any oral argument. [D.E. 242-2, ¶8.4.7]

This procedure would allow Sharper Image to continue objectionable advertising for three months, which would encompass, for example, an entire Christmas selling season from October through December, while out of compliance with its own agreement.

         *b.*      *Sharper Image Has Already Stopped Doing What it is Agreeing Not to Do*

Sharper Image's agreement to refrain from specified conduct is without consideration in any event.   Sharper Image has already, even years ago in some cases, stopped the conduct long

before making any such agreement with plaintiffs. This non-injunctive relief is a classic case of Sharper Image giving the class the sleeves out of its vest.

- First, Sharper Image has agreed that it "will not state that the Ionic Breeze is a medical device." [D.E. 242-2, ¶8.4.1.3.]   Sharper Image has *never* made the claim that an Ionic Breeze is a medical device. In fact, it based one of its motions in the California Actions on the premise that the Ionic Breeze is *not* a medical device. Rosenberg Aff., Exh. C.

- Sharper Image agrees it will stop using the seal of the Allergy and Asthma Foundation of America. Sharper Image does not use the seal now.

- Sharper Image agrees it "shall not make any advertising claims that ozone produces health benefits in connection with the Ionic Breeze." If Sharper Image ever made such a claim, it stopped doing so years ago.

- Furthermore, by simply renaming the product, Sharper Image can make any claims it likes, because "the above modifications do not apply to any product developed, marketed, or sold whose name does not include the term Ionic Breeze." [D.E. 242-2, ¶8.4.2.]

In short, the supposed modifications to advertising provide absolutely no consideration for the release or for the attorneys' fees that plaintiffs' counsel seek. They cannot support approval of the settlement.

**E.    The Relatively Undeveloped State of the Litigation Demonstrates the Inadequacy of the Settlement**

As set forth above, the *Figueroa* action was far less developed, and the plaintiffs far less well-apprised of many of the facts underlying the merits, than the California Actions. Under the fourth and sixth factors under *Bennett* – the complexity, expense, and duration of litigation and the stage of proceedings at which the settlement was achieved – the record shows that the settlement was prematurely negotiated and reflects eagerness to settle rather than to achieve the maximum benefit to the class.

**F.    The Settlement Is Procedurally Unfair And Unreasonable**

**1.    The Claims Procedure is Excessively Burdensome and Appears Designed to Discourage the Submission of Claims**

The proposed settlement provides financial benefit *only* to those class members who receive and review the class notice, visit the settlement website, correctly submit a claim under penalty of perjury within the required window of time so as to activate a "merchandise number," and then visit the website again as many times as necessary to confirm that the settlement has been finally approved. *See,* http://www.ibsettlement.com/faqs.htm#5, and other instructions and information generally at www.ibsettlement.com.  Other class members will receive nothing, but will nevertheless be bound by the release contained in the settlement documents.

The problems engendered by use of claim forms in the proposed settlement are greatly exacerbated by the lack of any guaranteed minimum payout or benefit total.  The Court is being asked to approve a settlement, and to award attorneys' fees, when it remains quite uncertain how much benefit will actually be provided to class members.  If the settlement documents had required that Sharper Image continue to issue benefits until a certain minimum value was actually provided, or even that any shortfall in reaching a specified threshold minimum payout would be made up by a final payment *cy pres* to a non-profit organization, then the Court would have a minimum baseline for valuing the settlement.  Instead, the settlement proposal leaves open the possibility that only a miniscule benefit will ultimately be enjoyed by the class and that the overall settlement will have little real value.

### 2.     The Claims Procedure is Unnecessarily Cumbersome and Difficult

Sharper Image has readily available to it contact information for a plurality, if not the majority, of class members.  Sharper Image mailed notice, either via its catalog or via a letter to those customers who decline to receive catalog mailings, using its Ionic Breeze Database containing customer contact information.  [D.E. 245, ¶ 7; D.E. 242-2, ¶ 1.23] There is no reason that Sharper Image cannot simply mail out claim forms to these customers.  Indeed, Sharper Image could have included the claim forms in the catalogs and in the individual letters it mailed.  For that matter, a claim form could have been included in any notice by publication as well.

It is unfathomable why plaintiffs and Sharper Image would set up an online claims procedure under which customers must first submit a claim form online, then remember to *return*

to the website to see whether the settlement has been approved. The website already collects contact information, including email addresses, for any customer who files a claim form. It would have been a simple matter to send a follow-up email to these claimants notifying them of final approval, if the settlement were approved. This is particularly true because the coupons and OzoneGuard purchase opportunity being offered have a very short shelf life from the date the settlement becomes final. There is no legitimate reason that class members should not be alerted and provided their merchandise credit electronically as soon as the settlement is final.

The only purpose served by the claims process as negotiated between plaintiffs and Sharper Image seems to be to reduce the number of claims made.

### 3. Sharper Image Could Have Provided An OzoneGuard or Certificate for Redemption Automatically At Least to Its Direct Purchasers.

Sharper Image has the information necessary to identify which of its direct purchasers purchased a model without an OzoneGuard and which would accept an OzoneGuard retrofit. There was no need to force such purchasers to file a claim. Sharper Image could either send an OzoneGuard to these class members directly or, at the very least, send them a certificate that those who wished an OzoneGuard could redeem – *for free.*

### 4. The Settling Parties Have Provided No Evidence of an Expected Redemption Rate

A crucial fact in valuing the settlement is the number of class members who have submitted or will submit claim forms. It is inevitable that only a small percentage of the total class will do so. Plaintiffs and Sharper Image, in their joint motion for preliminary approval, have submitted no evidence to establish an expected rate of redemption. Thus, the court has no basis on which to make the written findings under CAFA, 28 U.S.C. §1712(3), that this aspect of the settlement is fair, reasonable, or adequate.

While the specific return rates for claim forms varies between cases, they almost always fall within a limited range between zero and about 20%. *See, e.g., Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34, 41-42, 44 (D. Me. 2005) (noting expert testimony that return rates for claim forms are 10% or less in the vast majority of settlements); *Buchet v. ITT Consumer Fin. Corp.*,

845 F. Supp. 684, 694-695 (D. Minn. 1994) *and as modified at* 858 F.Supp. 944 (noting class members' rate of actually using future discounted services in a previous financial services settlement was far below 1%); Hillebrand & Torrence, *Claims Procedures In Large Consumer Class Actions and Equitable Distribution Of Benefits*, 28 Santa Clara L. Rev. 747, 752 (1988) (between 3% and 20% rate typical).

Furthermore, as explained above, the nontransferability of the coupon, the difficulty of making a claim,[9] the requirement that claims be certified under penalty of perjury, and the relative unattractiveness of the "benefit" offered, are all factors that would tend to decrease the rate of redemption.

### 5.    The Settlement's Notice Provisions Are Constitutionally Inadequate

"The due process demands of the Fifth Amendment and the Federal Rules of Civil Procedure require adequate notice to class members of a proposed settlement." *Meijer, Inc. v. 3M*, 2006 U.S. Dist. LEXIS 56744 (D. Pa. 2006). In a Rule 23(b)(3) settlement class, "notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e)." *In re Diet Drugs Prod. Liab. Litig.*, 226 F.R.D. 498, 517 (E.D. Pa. 2005) (citing *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 324-25 (E.D. Pa. 1993)). Rule 23(c)(2) provides that class members must receive the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Selecting the "best notice practicable under the circumstances" necessarily requires development of a factual record. Here, the parties proposed that notice be provided in three ways. First, Sharper Image would publish notice in its catalog and mail it to class members. Class members who had asked Sharper Image not to send catalogs would receive notice by U.S.

---

[9] For example, the claim form requires claimants either to retrieve a customer number form a catalog (an impossibility for those who purchased Ionic Breeze products from a third party distributor or who elect not to receive Sharper Image catalog mailings) or to provide proof of purchase, which according to the settlement website,  includes

"A copy of the reciept (sic) from your Ionic Breeze® purchase ;
"Cancelled check;
"Bank copy or bank generated record of a negotiated check;
"Credit card bill or reciept (sic) "
http://www.ibsettlement.com/faqs.htm#6

mail. Those class members who were not Sharper Image customers at all (i.e. they purchased a qualifying unit from another retailer) would receive notice by some form of publication. However, the parties did not develop an adequate record to establish that notice would be the best practicable under the circumstances.

The manner and form of notice provided to the class is committed to the discretion of the Court. *In re Domestic Air Transp. Antitrust Litigation, supra,* 141 F.R.D. at 538. The Court has been described as the "manager of the notification process." *Kleiner v. First Nat'l Bank,* 102 F.R.D. 754, 772 (D. Ga. 1983). Evaluating the propriety of notice falls within the "special province and responsibility of the court to direct the 'best notice practicable' to class members, advising them of their privilege to exclude themselves from the class." *Waldo v. Lakeshore Estates, Inc.,* 433 F. Supp. 782, 790 (D. La. 1977).

For class members not in the Ionic Breeze Database, notice was to be provided "in a manner to be agreed by and between Settlement Class Counsel and Settling Defendant's Counsel, at a cost not to exceed $200,000." [D.E. 245, ¶7] The provision permitting the parties to decide later how published notice would be given was no substitute for a court-confirmed, factually grounded, notice plan that the Court determined would provide due process.

The failure to submit a true notice plan was particularly unacceptable because the settling parties knew and acknowledged that they would not be able to reach all class members by individual notice. [D.E. 242-2, ¶7] Furthermore, a certified class action settlement not complying with 23(b)(3) notice requirements cannot have a res judicata effect on subsequent damages claims. *Parker v. Time Warner Entm't Co., L.P.,* 239 F.R.D. 318, 335 (D.N.Y. 2007), *citing Johnson v. General Motors Corp.,* 598 F.2d 432 (5th Cir. 1979) (a class action seeking monetary relief cannot be barred according to principles of res judicata by a previous class action in which no notice to absent class members was provided); *Besinga v. United States,* 923 F.2d 133 (9th Cir. 1991), *cert. den.,* 513 U.S. 864 (1994) (same).

The Court was not told in what periodicals the parties would publish class notice. *In re Domestic Air Transp. Antitrust Litigation,* supra, 141 F.R.D. at 549 (approving notice published in over 100 newspapers after evidentiary hearing demonstrating that 143,000,000 different

19

people would receive notice), The parties did not seek or obtain the Court's approval of the size of the notice that would ultimately be published. See, e.g., *Greenfield v Villager Industries, Inc.*, 483 F2d 824 (3rd Cir. 1973) (notice by publication in one-eighth page columns in newspapers on two days, seven days apart, was insufficient). Nor did they seek the Court's approval of the number of times that the notice would be published. *Id.* The Court's authority and discretion to order notice were undermined by the parties' failure to provide an acceptable notice plan for the Court's preliminary approval.

In assuring the court that it would be acceptable to let the parties work out the details of notice by publication on their own, the parties also misstated to the Court the legal standard by which the adequacy of notice is judged. In their Joint Motion for Preliminary Approval, the parties informed the Court that notice of settlement need not be "the best notice practicable under the circumstances" and, instead, a "lower standard" applies. [DE 212, p. 23, *citing Gottlieb v. Wiles*, 11 F. 3d 1004, 1012-13 (10th Cir. 1993) *overruled on other grounds, Devlin v. Scardelletti*, 536 U.S. 1, 6 (2002) ]. But that case was based upon an old version of Rule 23(e) that permitted notice of settlement "in such a manner as the court directs." Rule 23(e) has long since been amended to provide that the "court must direct notice in *a reasonable manner* to all class members who would be bound by a proposed settlement..." (Emphasis added).

As the Advisory Committee Notes make clear, notice in a reasonable manner "may require individual notice in the manner required by Rule 23(c)(2)(B) for certification notice to a Rule 23(b)(3) class." Whether the type of notice that could be achieved by spending $200,000 or less for class members not amenable to individual notice would be "reasonable"[10] is a question that should have been resolved before the order was entered, on a factual record provided by the settling parties.

### 6.    The notice was confusing to class members

All members of the nationwide class certified by the California Court had already received class notice. Those class members availed themselves of the opportunity to opt out of

---

[10] This notice had to reach class members nationwide. A single publication of an advertisement in the national Sunday magazine *Parade* starts around half a million dollars and goes up above a million, depending on the size of the ad. Rosenberg Aff., Exh. E.

that litigation if they so desired.  The notice in *Figueroa*, however, failed to mention the fact or consequences of the California notice.  Class members were not told that they must opt out again if they chose not to participate in the *Figueroa* action.  Nor were class members told that their decision to remain a part of the California case would be nullified if they did not opt out of the Figueroa settlement.  To presume understanding from a failure to act, is to stretch a legal fiction to the unimaginable.  "Informational deficiencies" preventing class members from fairly evaluating[11] their position relative to a proposed settlement implicate due process concerns and require heightened judicial scrutiny.  *In re GMC Pick-Up Truck Fuel Tank Products Liability Litig., supra*, 55 F.3d at 789.  Even the most diligent of consumers will be left guessing as to their membership status in the previously-certified lawsuit against Sharper Image.  The *Figueroa* notice fell far short of the constitutional standards by which it is measured.

### 7. The Requirements for Filing Objections Are Unduly Burdensome to Class Members

Class members' rights to pursue claims against Sharper Image will be terminated by the proposed settlement.  For this reason, "[i]t is imperative...to assure that before settlements receive judicial approval the court be well-informed of the views of those who feel that they are being called upon to make the sacrifices. Only by being so informed can the court be certain that the settlement does not compromise the legal rights of class members without their consent." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).  To compromise the rights of absent class members without their consent is a violation of due process. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). The ability to object is also essential "to permit the court to determine whether the expressed dissatisfactions with the proposed settlement agreement deprive it of the fundamental fairness which it must possess to merit approval." *Mandujano*, 541 F.2d at 835.

---

[11] The notice did not tell class members that counsel previously appointed to represent them objected to preliminary approval.  Further class member inquiry would be futile as Figueroa's counsel agreed to encourage class members to participate and not to opt out. [D.E. 242-2, ¶3.2]

In their zeal to urge the Court to approve a coupon settlement and $1.875 million in attorneys' fees, the parties[12] have placed virtually insurmountable burdens upon any class member choosing to object. Under paragraph 13 of the Order Preliminarily Approving Settlement, any person wishing to object must provide:

(a) A statement of each objection asserted;

(b) A detailed description of the facts underlying each objection;

(c) A detailed description of the legal authorities supporting each objection;

(d) A statement whether the objector intends to appear and argue at the Fairness hearing and, if so, how long the objector anticipates needing to present the objection;

(e) A list of witnesses whom the objector may call by live testimony, oral deposition, or affidavit during the Fairness Hearing;

(f) A list of the exhibits and documents that the objector will offer during the fairness Hearing, along with copies of such exhibits and documents;

(g) The name and contact information, if any, of counsel for the objector; and

(h) A detailed statement of any personal or financial interest of the objector or his/her counsel in the outcome of this class action, determination of the objection, Preliminary Settlement Approval, the Final Order, or Final Judgment.

The sheer number and nature of these onerous requirements are likely to prevent most class members from objecting. Mr. Potter can comply with them because he is represented by counsel, but a class member who simply wishes to object to any of the many unfair aspects of the proposed settlement should not have to hire an attorney simply to do so.

The objection deadlines are also unreasonable. Any objector who wishes to assert any objection to the settlement must do so on or before June 22, 2007. The parties proposed these deadlines knowing that the information available at that time would be insufficient to interpose all objections that might be appropriate.

---

[12] The parties jointly presented the Court with voluminous paperwork and asked the Court to enter a series of orders without hearing, or on two days' notice. The Court plainly trusted the parties, as officers of the Court, to present it with proposed order that provide due process. The Court also expected counsel for plaintiffs to act on behalf of the proposed class. The parties abused the Court's trust.

For example, objectors cannot know as of June 22, 2007 how many class members have elected to opt out of the proposed settlement, how many class members will elect to obtain benefits, how many members attempting to receive benefits will succeed and how many will be hampered by the onerous claim form requirements.

As of June 22, 2007, it is uncertain whether the class was properly notified. Objectors do not know how notice was published, how many mailed notices were returned for insufficient addresses, or what the procedure was for remailing. Class members have no way of knowing how many class members plaintiffs' counsel advised not to opt out, against their ethical duty.

In part because the parties have refused to provide discovery, it is today uncertain whether the settlement is a product of collusion or is simply a reverse auction. Intervenor does not know whether plaintiff Garner is an appropriate class representative and whether there *is* a representative for the subclasses that should have been created.[13] Indeed, it is not even known how much of the $1.875 million of negotiated fees class counsel will ask the Court to award.

Despite all of these uncertainties which should be known to class members, any person wishing to object is expected to provide all facts, legal authorities, documents (with copies provided to counsel), witnesses, hearing estimates and a detailed statement of any financial interest, all before the parties provide basic information to the court and class members to enable them to do so. These requirements are necessarily impossible to meet because many events bearing on the settlement have not yet taken place and information is not yet available.

### 8.    The Objection Requirements Fall Especially Harshly on Parties Not Represented by Counsel

If counsel who has litigated this case for many years feel hampered by these burdensome and sometimes impossible requirements, it goes without saying that such requirements are excessive for members of the class who simply feel that the deal stinks.

The preconditions to having one's objections considered are not even fully explained in the class notice. The notice refers any potential objector to the settlement documents posted on the settlement website, which in turn do not even include the Court's Preliminary Approval

---

[13] See discussion below at Section II.C.

Order instructing class members how to object, nor does it cite a page or paragraph number of the 45-page settlement agreement that pinpoints the objection provisions. If they find the objection requirements in the agreement, class members must then figure out on their own how to comply. If they do not, they "shall not be heard during the Fairness Hearing; nor shall their objections be considered by the Court." [DE 245 ¶ 14]

As of the date of this memorandum, two class members, motivated by the unfairness of the proposed settlement but not represented by counsel, have written letters to this Court to object in lay language. [DE 278, 281] No doubt the parties will contend that neither objection complies with this Court's Order. This Court should nonetheless consider any such objections, when determining, under the fifth *Bennett* factor, "the substance and amount of opposition to the settlement." It should also consider how many objections were thwarted by the burdensome requirements and the failure to set them forth in full in the Notice that each class member is presumed to have received.

This class consists of purchasers nationwide. It is simply unreasonable to ask a class member unrepresented by counsel to find and read the whole settlement agreement to comply with the settlement's unusually onerous requirements for objecting.

9. **The Requirement that All Attorneys' Fees Motions be Filed by the Opt-Out Date is Also Unreasonable**

Paragraph 21 of this Court's Order requires "Settlement class counsel, *or any other counsel or Person* who believe they are entitled to an award of attorneys' fees or costs to file an application for attorneys' fees no later than the date that objections to the Settlement Agreement are due." [DE 245, ¶22] As applied to anyone other than Settlement Class Counsel, such a requirement is unreasonable and, indeed, impossible to fulfill.

Objectors to a settlement may be entitled to an award of attorneys' fees if their objections confer a benefit on the class. *In re Domestic Air Transp. Antitrust Litig., supra,* 148 F.R.D. at 358 ("If objectors' appearance sharpens the issues and debate on the fairness of the settlement, their performance of the role of devil's advocate warrants a fee award."). The Court may award such fee "where a proper showing has been made that the settlement was improved as a result of

24

their efforts." *Mogell v. Franklin (In re Westinghouse Secs. Litig.)*, 219 F. Supp. 2d 657, 660 (D. Pa. 2002), *aff'd sub nom Zucker v. Westinghouse Elec.*, 374 F.3d 221 (3d. Cir. 2004) (*quoting White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974)).

The Court will not know whether the settlement was improved as a result of any objector's efforts until after the Fairness Hearing. Requiring an attorney fee application before that time is improper and is yet one more instance of its unfairness as a whole.

### 10.   The Deadline for The Settling Parties to Respond to Objections is Unfair and Unreasonable

All objections must be filed by June 22, 2007. Yet the settling parties gave themselves until August 9, 2007, only a week before the Fairness Hearing, to respond to these objections. The objectors have no opportunity to reply in writing and precious little time even to digest and intelligently discuss the responses at the Fairness Hearing.

The parties afforded themselves, however, a full 48 days to respond. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, *supra,* 339 U.S. 306, 314. The only possible justification for this one-sided briefing schedule can be to shut down objectors.

### 11.   Class Members Should Not Be Encouraged to Stay In Or Opt Out

Class counsel is a fiduciary for the class. *Sondel v. Northwest Airlines*, 56 F.3d 934, 939 (8th Cir. 1995). As such, they may not prejudice the Class's interest, or further their personal interests at the expense of the Class." *Id.* Moreover, "it is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action." *Kleiner*, *supra,* 751 F.2d at 1202. "For this reason, Courts need to ensure that individual decisions to opt out are independent and free from coercion." *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 488 (D. Cal. 2006) *citing* Manual for Complex Litigation, Fourth § 21.33 (2004).

Here, class counsel, acting in a fiduciary capacity, contractually obligated itself to counsel all class members in a particular manner (not to opt out). [D.E. 242-2, ¶3.2] Failure to

"cooperate and assist with regard to settlement" constitutes a material breach of the Agreement. *Id.*, ¶3.3.

Class members are entitled to expect more from their appointed fiduciaries. Counsel's agreement ensures that class members receive will not receive the accurate and impartial advice which is their due. This provision in the agreement alone renders the settlement unapprovable.

## II. THE SETTLEMENT CLASS CANNOT BE CERTIFIED

In seeking preliminary approval of the class action settlement, the parties acted as if class certification were a foregone conclusion upon presentation of the proposed agreement. Such a view undoubtedly prevailed prior to *Amchem Products v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231; 138 L. Ed. 2d 689 (1997). However this approach was in error. As the court noted in *Amchem*, to ensure fairness, the parties must demonstrate to the Court that a class indeed may be certified. *Id.* at 622.

In this case, class certification had been fully briefed and was still pending when the parties approached the Court for preliminary approval and certification of a settlement class. Sharper Image has not even attempted to explain how certification of a class can now be proper, after it stridently insisted to this Court that no class can or should be certified.

### A.   Plaintiffs Cannot Establish Adequacy of Representation

The adequacy of representation, by both the class representative and class counsel, is one of the factors under *Amchem* that cannot be glossed over simply because a class is to be certified in settlement rather than after a contested proceeding. *Amchem Products*, 521 U.S. at 620, 625-626. The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., supra,* 55 F.3d at 800.

In this case, the named plaintiffs' interests are not aligned with that of the class members, as demonstrated by the named plaintiffs' willingness to agree to overreaching terms demanded by Sharper Image.

Moreover, Figueroa's attorneys are plainly unqualified to represent the class. They agreed to terms in the settlement agreement that violate the Florida Rules of Professional Conduct. Plaintiffs' counsel have a serious conflict of interest and have breached their ethical duties vis-à-vis the class. They cannot be confirmed as class counsel.

### 1.       The Class Representatives are Inadequate

A federal district court may not approve a class-action settlement that seeks to release claims that are inadequately represented by the named plaintiffs. *International Union of Electronic, Electrical, Salaried, Mach., and Furniture Workers v. Unisys Corp.*, 155 F.R.D. 41, 48 (E.D.N.Y. 1994). Here, the Court does not have a basis on which to find that the named plaintiffs have adequately represented the interests of the class.

> a.       *The Class Representatives Agreed to Terms*
> *Detrimental to the Interests of the Class*

Figueroa and Garner initially approached the Court for preliminary approval of a settlement that included two truly shameful provisions. First, while this case involved claims only for economic damages from the purchase of falsely advertised consumer products and not for personal injuries, the settlement originally presented to the Court, which both Figueroa and Garner personally signed, would have released *personal injury claims* of all class members. [D.E. 213-2, ¶¶15.2] This Court initially denied preliminary approval of the settlement until this provision was removed. [D.E. 238]

Second, the original settlement agreement signed by both Figueroa and Garner provided:

> Settlement Class Counsel, Plaintiffs and the Settlement Class Members agree not to disparage the Ionic Breeze® or Sharper Image and its products, and expressly waive any right to assert First Amendment, Free Speech or anti-SLAPP protection in any action to enforce this provision.

[D.E. 213-2, ¶14]

In other words, plaintiffs signed off on a settlement that would have simultaneously a) created a new cause of action for Sharper Image's benefit, against any class member who anywhere, any time, disparaged Sharper Image in any way or *any* of Sharper Image's products and b) waived that class member's defense that the speech was protected by the First Amendment and/or anti-SLAPP protections.

There is no excuse for plaintiffs' having agreed to these terms. They are antithetical to every duty a class representative has to *protect* the interests of absent class members. That the settling parties hastily removed this provision from the settlement only after counsel for the California class lambasted it at the preliminary approval hearing does not repair the plaintiffs' credibility. Either Figueroa and Garner did not read or understand the settlement agreement before they signed it, or they signed it knowing what they were doing to class members. Either way, the Court can have no confidence in their adequacy to represent the class.

Plaintiffs Figueroa and Garner have also retained counsel who have abdicated their duty to represent the interests of class members and have placed themselves in an impossible conflict of interest vis-à-vis the class, as discussed below.

b.  *Garner is Completely Untested as a Plaintiff and Has Done Nothing to Demonstrate Her Ability to Protect the Class*

Counsel for Figueroa proposed Dixie Garner as a second plaintiff, after they failed to ensure that Figueroa himself had timely opted out of the California Action, and after Sharper Image attacked his fitness as a class representative. The affidavit that Ms. Garner executed in support of her request to be added as a class representative contains not a single fact demonstrating her fitness.

First, there is no evidence that Ms. Garner is even a member of the class. The affidavit does not state that she has ever purchased an Ionic Breeze. [D.E. 211] Second, the affidavit is devoid of any information to show that she understands what it is to be a class representative, what her fiduciary responsibilities are, how she intends to meet any financial responsibility that the court may impose on her, what her relationships are, if any, with any of the other parties in the case, and any other information that would shed light on her ability to serve as a guardian of the interests of absent class members.

2.  **The Provisionally Appointed Class Counsel Are Inadequate**

a.  *Counsel Placed The Interests of Class Members in Jeopardy by Agreeing to Oppressive Terms*

Not only the plaintiffs, but also their lawyers, showed themselves to be wholly inadequate to represent the interests of absent class members when they agreed to release personal injury claims and to allow Sharper Image to sue class members under the settlement agreement. No amount of backtracking from that initial settlement agreement can turn them into the fiduciaries they are supposed to be.

b.   *The Settlement Cannot Be Approved Because Class Counsel Failed To Properly Represent The Interest Of The Class*

The terms and conditions of the Settlement Agreement create an inherent and unwaivable conflict of interest, in violation of the Florida Rules of Professional Conduct, between class counsel and members of the class. Class counsel have put their own interests (as well as the interest of Sharper Image) above the interests of class members. Plaintiffs' counsel have breached their duty of undivided loyalty to their purported clients, members of the class in this case, and stand in violation of Florida Rules of Professional Conduct, Rule 4-1.7 (conflicts of interest) and Rule 4-1.1 (duty to provide competent representation).

As signatories to the Settlement Agreement, class counsel are bound by its terms. Settlement Agreement, ¶2.1. A settlement agreement that binds a party's attorney is carefully scrutinized for compliance with the Florida Rules of Professional Conduct. See, Florida Ethics Opinion 04-2. Under Florida ethical standards, lawyers owe a duty of undivided loyalty to each and every client. See, *Prudential Ins. Co. of America v. Anodyne, Inc.*, 365 F.Supp.2d 1232 (S.D.Fla. 2005); *Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F.Supp. 419 (S.D.Fla. 1987).

Having entered into the settlement agreement, plaintiffs' counsel owe contractual duties to the defendant while, at the same time, owing duties of undivided loyalty to class members. These competing duties cannot be reconciled, cannot coexist, and create inherent, unwaiveable conflicts of interest, in violation of Florida Rule of Professional Conduct 4-1.7 (conflicts of interest) and result in violations of Florida Rules of Professional Conduct, Rule 4-1.1 (duty to provide competent representation).

29

Timothy P. Chinaris, former Ethics Director of the Florida Bar, is submitting an expert witness report concurrently with these objections. Mr. Chinaris states, among other things:

A.      Plaintiffs' counsel are contractually obligated to "recommend approval of and vigorously support" the settlement to class members. [D.E. 242-2, ¶ 3.1] A conflict of interest exists when a lawyer contracts with a client's adversary to give specific advice to the client or to urge the client to take specified action. Chinaris Report, ¶20b.  Class counsel's conduct in this regard also violates Florida Rules of Professional Conduct, Rule 4-1.1 (duty to provide competent representation).  Chinaris Report, ¶21b.

B.      Plaintiffs' counsel are now contractually obligated to "encourage Putative Class Members to participate and to not opt out" of the proposed settlement.  [D.E. 242-2, ¶3.2] A conflict of interest exists when a lawyer contracts with a client's adversary to give specific advice to the client or to urge the client to take specified action.  Chinaris Report, ¶20c.  Class counsel's conduct in this regard also violates Florida Rules of Professional Conduct, Rule 4-1.1 (duty to provide competent representation).  Chinaris Report, ¶21c.

C.      Plaintiffs' counsel have contracted with Sharper Image to "make all reasonable efforts to enforce the jurisdictional and injunctive provisions" of the settlement "including joining in any motions or stipulations that may be necessary to stay current or future-filed actions . . .." [D.E. 242-2, ¶ 3.2]  A conflict of interest exists when a lawyer contracts with a client's adversary to help the adversary enforce a settlement agreement regardless of whether the client may have grounds to not seek or to oppose enforcement.  Chinaris Report, ¶20d.  Class counsel's conduct in this regard also violates Florida Rules of Professional Conduct, Rule 4-1.1 (duty to provide competent representation).  Chinaris Report, ¶21d.

D.      Failure to "cooperate and assist with regard to the settlement as expressly and implicitly contemplated in the [Proposed] Agreement" constitutes a material breach of the Settlement Agreement.  [D.E. 242-2, ¶ 3.3]  Plaintiffs' counsel have created a conflict of interest because they would be violating self-imposed contractual duties to their client's adversary simply by deciding and recommending, for example, that the best interests of their client would be served by *not* cooperating with the adversary in settlement.  Chinaris Report, ¶20e.

30

E.     Plaintiffs' counsel violated their duty to provide competent representation (Florida Rules of Professional Conduct, Rule 4-1.1) in supporting a release that includes claims that class members "do not know or suspect to exist in their favor at the time of the signing" of the Settlement Agreement.  Class counsel stand in violation of their duty to provide competent representation in advocating such a release when class counsel may not have fully developed the facts in this case.  Chinaris Report, ¶¶21e and 22.

Finally, class counsel's violations of Florida Rules of Professional Conduct, Rule 4-1.7 (conflicts of interest) and Rule 4-1.1 (duty to provide competent representation) cannot be ethically waived.  Chinaris Report, ¶¶20f and 22. As the former Ethics Director of the Florida Bar has concluded, class counsel owes contractual obligations to the defendant and, at the same time, owes duties of undivided loyalty and competent representation to class members.  These competing obligations cannot be reconciled.  Consequently, the Settlement Agreement cannot be given final approval.

**B.     Common Questions of Law Do Not Predominate and Class Certification in This Case is Not Superior to the Alternatives**

Plaintiffs' case for class certification also falls apart over commonality and superiority. In California, the Superior Court was persuaded that California law could fairly apply to the claims of the class nationwide, both under the constitutional principles set forth in *Phillips Petroleum v. Shutts,* 472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985), and under California choice of law rules.  Sharper Image could not argue that any other state's law should be applied, because of the nexus of connections between Sharper Image, the class, and the state of California.  [D.E. 219, Exh. 5].

However, there are no comparable links between Florida, Sharper Image, and the class. Under Florida law (applicable to this diversity case under *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)), the Court must determine, for example on the breach of warranty claim, whether the transaction at issue bears an "appropriate relation" to the state of Florida, taking into account such factors as the residence of the parties, the location of negotiations, the place of purchase of the goods, and the physical location of the goods at

31

issue." *Premix-Marbletite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F.Supp.2d 1348, 1353 (S.D. Fla. 2001). Of course, Sharper Image does not reside in Florida; its headquarters are in San Francisco, California. Furthermore, sales of Ionic Breeze products have taken place all over the country, as the parties themselves demonstrated in the motion for preliminary approval, and the products purchased are still presumably located all over the country. Under these facts, Florida law could not be applied to the claims of the class. As Figueroa conceded in his class certification motion, each plaintiff's home state law would have to be applied to his or her claims. Accordingly, it would be extremely difficult for plaintiffs to establish predominance of legal issues.

Second, the Florida action is not a superior means of prosecuting the case as a class action. The California Actions are nationwide, already-certified, coordinated, specially-assigned class actions that are farther along in prosecution, and present less of a predominance of individual questions over common questions than the instant action. [D.E. 196 and exhibits thereto] Accordingly, the Court has no basis on which to find that *Figueroa* is a superior vehicle for prosecuting the same claims against Sharper Image that are asserted in the California Actions.

C.     **Inherent Conflicts Among Settlement Class Members Preclude Certification**

Parties seeking certification of a settlement class must assure the Court that "diverse groups" or individuals disparately affected by the settlement are adequately represented. *Amchem Prods. v. Windsor, supra,* 521 U.S. at 627. Adequate representation may require separate subclasses, each represented by an appropriate class representative. *Id.*

A fairness concern "at the core of the class action mechanism" is whether similarly situated class members are treated equally by the settlement. *Parker v. Time Warner Entm't Co., L.P.,* 239 F.R.D. 318, 338 (D.N.Y. 2007). "Indeed, where a proposed settlement provides favorable treatment to some segment of the class, careful judicial scrutiny is required to prevent injustice and to "ensure that the burden of settlement is not shifted arbitrarily to a small group of class members." *Id., quoting Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir.

1983).  Here, at least four distinct groups are treated differently by the settlement.  There is no justification offered for such treatment.

First, the settlement offers a merchandise credit "to each Settlement Class Member, limited to one (1) per Household (regardless of the number of Ionic Breeze products Purchased by said member or the amount spent on said products)..." [D.E. 242-2, ¶8.2.2]  Thus, class members who purchased only one unit are treated the same as those who purchased several.  At a retail price of $300-$400 per unit, multiple purchasers are situated differently than purchasers of a single machine and should be separately represented.  Yet both receive precisely the same "benefit" from the settlement.

Second, the component of the settlement offering class members the chance to buy an OzoneGuard is only available to those class members who have purchased "floor model" air purifiers. [D.E. 242-2, ¶8.3.1]  Yet the class consists of individuals who have purchased *any* Ionic Breeze model and includes many that are not in fact "floor models," *Id.,* ¶¶2.2, 1.22.  They get nothing.  Again, no explanation was offered to the Court, nor was a separate class representative offered for those affected class members.

Third, the settlement includes purchasers of units that were sold with an attached OzoneGuard.  [D.E. 242-2, ¶1.22]  For such individuals, there is no benefit at all to purchasing another.  Again, affected class members are not separately represented.

Finally, some members of the class have already purchased OzoneGuards, which Sharper Image has been offering for sale for some time. No provision is made to refund any part of the purchase price to these class members, and of course they will not benefit by buying another OzoneGuard no matter how much Sharper Image charges for it.

As demonstrated above, the proposed settlement treats some segments of the class less favorably than it does others.  The parties' failure to even identify such differences, much less offer the segments appropriate representation, makes certification of the class inappropriate and is fatal to any settlement approval. *Amchem, supra,* 521 U.S. at 627.

### III.  INTERVENTOR'S STATEMENTS IN COMPLIANCE WITH THE TERMS OF THE COURT'S PRELIMINARY APPROVAL ORDER

**A.      Documents Potter Intends To Rely Upon At the Fairness Hearing**

Pursuant to paragraph 13(f) of this Court's Order granting Preliminary Approval, Mr. Potter is required to provide a list of all of the exhibits and documents that he will offer during the fairness hearing, along with copies of such exhibits and documents.  As discussed above, Intervenor believes that the parties crafted this provision unfairly to stifle any opposition, as it requires evidence supporting objections when a case has yet to be made in support of fairness.

Yet there is one additional impediment that is perhaps intentionally caused by this provision.  Potter has litigated this case for over three years.  All of the documents provided in discovery were done under a protective order issued by the Superior Court of San Francisco, California.  Under the provisions of that Order, Potter may use the documents for the purpose of *that* litigation only.  Moreover, Potter may not share the contents of such documents with third parties such as the plaintiffs' counsel in Figueroa.  Under California law, violation of that Order may be punishable by contempt.

In an attempt to comply with this Court's Order, and not violate the California Protective Order, Mr. Potter has adopted the following procedure.  Potter will provide a list of documents, by Bates number, that he may use at the Fairness Hearing based upon the arguments presented to the Court thus far.  Should Sharper Image wish to waive the provisions of the California Protective Order, it may share that list with counsel for plaintiffs herein.  If Sharper Image agrees to waive the provision of the Protective Order permitting use of documents in the California Proceedings only, Potter hereby requests that Sharper Image prepare a stipulation and order permitting plaintiffs to lodge such exhibits with this Court together with any motion it deems necessary to lodge such exhibits under seal.  If Sharper Image does not do so by July 6, 2007, Potter will seek further guidance from the Court.

The documents not covered by the protective order are attached to the accompanying declaration of counsel in support of the objections.

**B.     Witnesses Whom Intervenor Intends to Present by Live Testimony, Oral Deposition Testimony, or Affidavit**

1. Intervenor is submitting herewith the Expert Witness Report of Timothy P. Chinaris.

2. By order of this Court, Intervenor will be taking the depositions of Sharper Image corporate designees and of the two named plaintiffs before the Fairness Hearing. Intervenor anticipates presenting any testimony by these witnesses through the transcript of their depositions, but reserves the right to present their live testimony if necessary.

**C.     Personal or Financial Interest of the Objector or His Counsel**

1. John Potter has no personal or financial interest in the outcome of this Class Action, determination of his objections, Preliminary Settlement Approval, Final Order, or Final Judgment, except that if the settlement is not finally approved, Potter will continue as a member of the class in the California Actions and may be entitled to a class member's share in any recovery obtained in those Actions. Furthermore, if the settlement in this case is improved as a result of Potter's objections, he and his counsel may apply for an appropriate award of fees.

2. Intervenor's counsel have no personal or existing financial interest the outcome of this Class Action, determination of his objections, Preliminary Settlement Approval, Final Order, or Final Judgment. However, if the settlement is not finally approved and the injunction against prosecution of the California Actions is dissolved, counsel will continue to litigate the California Actions on behalf of the class and, in the event of any settlement or judgment in those Actions, may apply to the Court for an award of attorneys' fees. If, as discussed above, the settlement is improved in this Action as a result of the efforts of Intervenor and his counsel, they may apply for an award of attorneys' fees as permitted under applicable law.

**D.     Whether The Objector Intends to Appear at the Fairness Hearing**

Intervenor intends to appear and make a presentation to the Court at the Fairness Hearing. Because Intervenor will be conducting discovery before that hearing, making a precise time estimate is difficult. Intervenor currently estimates the presentation will take at least three hours.

Respectfully submitted,
LEWIS TEIN, P.L.
*Local counsel for John Potter*
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Telephone:  (305) 442-1101
Facsimile:  (305) 442-6744

By_____/s/ Michael R. Tein\_\_\_\_
    GUY A. LEWIS
    Fla. Bar No.: 0623740
    lewis@lewistein.com
    MICHAEL R. TEIN
    Fla. Bar No.: 993522
    tein@lewistein.com
    DAVID B. ROSEMBERG
    Fla. Bar. No.: 0582239
    rosemberg@lewistein.com

DANIEL E. BIRKHAEUSER *(pro hac vice)*
State Bar No. 136646
JENNIFER S. ROSENBERG *(pro hac vice)*
State Bar No. 121023
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA  94598
Telephone: (925) 945-0200
Facsimile:  (925) 945-8792

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 22, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List by U.S. Mail.

    \_\_\_\_\_/s/ Michael R. Tein\_\_\_\_
    MICHAEL R. TEIN

## SERVICE LIST

Lubna M. Faruqi, Esq.
Adam Gonnelli, Esq.
FARUQI & FARUQI, LLP
320 East 39th Street
New York, NY 10016

Daniel E. Birkhaeuser, Esq.
Jennifer S. Rosenberg, Esq.
BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, California 94598

R. Duane Westrup, Esq.
Mark L. Van Buskirk, Esq.
WESTRUP, KLICK & ASSOCIATES
444 West Ocean Blvd., Suite 1614
Long Beach, CA 90802
Brian J. Robbins, Esq.
ROBBINS, UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101

Daniel Dennis Dolan, II, Esq.
Robert L. Parks, Esq.
Haggard Parks Haggard & Lewis
330 Alhambra Circle, 1st Floor
Coral Gables, FL 33134

Jere F. White, Esq.
Enrique J. Gimenez, Esq.
Stephen J. Rowe
Lightfoot Franklin & White
400 20th Street North
The Clark Building
Birmingham, AL 35203-2706

David Aronoff, Esq.
Gayle I. Jenkins, Esq.
THELEN, REID & PRIEST, LLP
333 S. Hope Street, 29th Floor
Los Angeles, CA 90071-3048

Patrick M. Ryan, Esq.
Hailey R. Hibler, Esq.
THELEN REID & PRIEST, LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3601

James S. Toscano, Esq.
Terry C. Young, Esq.
Lowndes Drosdick Doster Kantor &
Reed
P.O. Box 2809
Orlando, FL 32802-2809