# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DISTRICT

CASE NO.: 05-21251-ALTONAGA/BANDSTRA

MANUEL FIGUEROA, and DIXIE M. GARNER,
individually and on behalf of those similarly
situated,

        Plaintiff

vs.

SHARPER IMAGE CORPORATION a Delaware
corporation, and ZENION INDUSTRIES, INC., a
California corporation,

        Defendants
_____/

## EXPERT WITNESS REPORT OF TIMOTHY P. CHINARIS

TIMOTHY P. CHINARIS, having been retained as an expert witness by the law firm of Westrup Klick, LLP in the above-referenced matter, hereby provides this Expert Witness Report pursuant to Rule 16.1(K) of the Local Rules of this Court.

## PROFESSIONAL BACKGROUND AND QUALIFICATIONS

1. My name is Timothy P. Chinaris.

2. I am a resident of the State of Alabama, currently residing in Wetumpka, Alabama.

3. I am an attorney licensed in the State of Florida.

4. My professional qualifications and experience are set forth in my curriculum vitae, which is attached hereto and incorporated herein by reference. The contents of said curriculum vitae are true and accurate.

5. I was employed by The Florida Bar in Tallahassee, Florida from August 1986 to April 1997. From 1986 to 1989, my title was Assistant Ethics Counsel. From December 1989 to April 1997, I held the position of Ethics Director of The Florida Bar.

6. As Ethics Director of The Florida Bar, I was responsible for the operation of the Florida Bar's Ethics Department. The Ethics Department employs licensed Florida attorneys whose duties include providing oral and written advisory opinions on various ethics-related topics to practicing Florida Bar members. The Florida Bar Ethics Department annually renders thousands of ethics and advertising opinions to Florida lawyers; during 1996, for example, more than 21,000 such opinions were rendered.

7. As Ethics Director of The Florida Bar, my specific responsibilities included: hiring, training, and supervising the Ethics Department's attorneys; personally providing oral and written advisory ethics opinions to practicing attorneys; advising The Florida Bar Board of Governors on issues of professional ethics and lawyer advertising; serving as counsel to the Professional Ethics Committee, Standing Committee on Advertising, and other committees of The Florida Bar; consulting with attorneys in The Florida Bar's Lawyer Regulation Department, Unlicensed Practice of Law Department, and Center for Professionalism regarding cases, advisory opinions, and programs; speaking to local, state, and national groups on matters of legal ethics; and writing about legal ethics, professional responsibility, and lawyer advertising for various publications.

8. During my employment with The Florida Bar, I personally rendered thousands of advisory ethics opinions to practicing Florida attorneys on a wide variety of matters concerning legal ethics (including conflicts of interest), professional responsibility, and lawyer advertising.

9. From April 1997 to September 2000, I was employed by the Florida Coastal School of Law in Jacksonville, Florida as Associate Professor of Law and Associate Dean for Information Resources and Technology. I taught courses in legal ethics and professional responsibility. I developed the Internet web site for the Association of Professional Responsibility Lawyers, a national organization of lawyers who practice in the area of legal ethics and professionalism. After joining the faculty of Florida Coastal School of law, for a time I continued to assist The Florida Bar in legal ethics matters by serving as consultant to the Florida Bar Presidential Advertising Task Force. I was the primary drafter of the Florida Bar rules governing lawyer advertising and solicitation as developed by the Task Force and approved by the Supreme Court of Florida.

10. From September 2000 to June 2005 I was employed by Appalachian School of Law in Grundy, Virginia as Associate Professor of Law and Assistant Dean of Information Resources. My duties included teaching courses in legal ethics and professional responsibility.

11. Currently I am employed by Faulkner University's Jones School of Law in Montgomery, Alabama as Professor of Law and Associate Dean for Information Resources. My duties include teaching courses in professional responsibility, legal ethics, and other subjects, and administering the law library.

12. During my employment as Florida Bar Ethics Director and since leaving the Bar's employ, I have: advised lawyers on issues relating to various aspects of legal ethics, including conflicts of interest; advised lawyers on legal malpractice and unlicensed practice of law issues; represented

lawyers in various professional responsibility-related matters, including Florida Bar disciplinary cases; and consulted and testified as an expert on various legal ethics and professional responsibility issues.

13. Currently I am a member of the Professional Ethics Committee of The Florida Bar, having served on the committee from 1997 to 2003 and from 2006 to present. I chaired the Professional Ethics Committee from 2002 to 2003. I am president-elect of the Florida Bar's Out-of-State Practitioners Division. I am a member of the Florida Bar Attorney-Client Privilege Task Force. I have served on The Florida Bar Standing Committee on Unlicensed Practice of Law, The Florida Bar Prepaid Legal Services Committee, The Florida Bar Special Committee to Review the ABA Model Rules 2002, the Florida Bar Special Committee on Website Advertising Rules, and The Florida Bar Professionalism Committee.

14. I have written and spoken on a variety of legal ethics topics. I developed and maintain the legal ethics web site "sunEthics.com" (http://www.sunethics.com).

15. I have consulted and testified in state and federal court matters as an expert witness on a variety of legal ethics issues, including conflicts of interest, legal malpractice, confidentiality, trust accounting, lawyer advertising, and unauthorized practice of law.

16. I consult with and represent practicing attorneys and others regarding issues of professional responsibility, legal ethics, lawyer advertising, legal malpractice, and unauthorized practice of law.

## PRIOR TESTIMONY AS AN EXPERT

17. To the best of my recollection, during the past five years I have testified at deposition or at trial in the following cases: *Mason v. Hoffman-Larouche, Inc.*, Fla. 1st Circuit Pensacola (motion for sanctions due to law firm conduct, for law firm; 2006; deposition); *Florida Bar v. Somera*, Fla. Supreme Court (lawyer disciplinary case, for respondents; 2006; deposition); *Polen v. Polen*, Fla. 15th Circuit West Palm Beach (disqualification motion, for respondent; 2005; trial); *Florida Bar v. St. Louis*, Fla. Supreme Court (lawyer disciplinary case, for Bar; 2004; deposition); *Massey v. David*, Fla. 8th Circuit Gainesville (legal malpractice case, for defendant; 2004; trial); *Kawasaki v. Anderson*, Fla. 4th Circuit Jacksonville (legal malpractice case, for defendant; 2003; deposition); *Allstate Insurance Company*, Fla. 7th Circuit Volusia County (disqualification motion, for movant; 2002; trial); and *Peebles v. Sheridan Health Care*, Fla. 17th Circuit Broward County (legal malpractice case, for plaintiff; 2002; deposition and trial).

## MATERIALS REVIEWED

18. In connection with this matter, I discussed this matter with attorney Mark Van Buskirk of the Westrup Klick law firm and have reviewed documents provided to me by Mr. Van Buskirk, including a document titled "Amended Settlement Agreement and Release" in this matter.

## MY OPINIONS IN THIS MATTER

19. It is my opinion that, when considered in their entirety, the terms of the "Amended Settlement Agreement and Release" (the "Proposed Agreement") create an inherent, unwaiveable conflict of interest for the lawyers for Plaintiffs and the class (the "plaintiffs' counsel"), in violation of the Florida Rules of Professional Conduct.

   a. Attorneys admitted to practice in the United States District Court for the Southern District of Florida must comply with the Rules Regulating the Florida Bar, which include the Florida Rules of Professional Conduct. Local Rule 11.1(C), United States District Court for the Southern District of Florida. Paragraph 24 of the Proposed Agreement provides that the Proposed Agreement will be construed and enforced pursuant to the laws of the State of Florida.

   b. As signatories to the Agreement, plaintiffs' counsel would be bound by its terms. See page 2 of the Proposed Agreement ("Now therefore, it is agreed by and among the undersigned [which would include plaintiffs' counsel], on behalf of the Settling Defendant, the Plaintiffs, and the Settlement Class, that this Class Action be conditionally settled, compromised, and dismissed in its entirety with prejudice, subject to the approval of the Court, on the following terms and conditions . . . "); Paragraph 2.1 of the Proposed Agreement (Proposed Agreement "governs, within the scope of its subject matter, the Settling Defendant, Settling Defendant's Counsel, *Settlement Class Counsel* [plaintiffs' counsel], Putative Class Members, and those purporting to act on behalf of any Putative Class Member" (emphasis added)).

   c. Under Florida ethical standards lawyers owe a duty of undivided loyalty to each and every current client. See, e.g., *Prudential Ins. Co. Of America v. Anodyne, Inc.*, 365 F.Supp. 2d 1232 (S.D.Fla. 2005); *Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F.Supp. 419 (S.D.Fla. 1987).

   d. It is my opinion that the concept of a party's attorney concurrently assuming contractual duties to an adversary party generally falls outside of the norms of professional conduct in Florida. See Florida Ethics Opinion 04-2 (settlement agreement that binds party's attorney carefully scrutinized for compliance with Rule of Professional Conduct 4-5.6).

20. It is my opinion that specific provisions of the Proposed Agreement would place plaintiffs' counsel in the position of violating Florida Rule of Professional Conduct 4-1.7, concerning conflicts of interest involving current clients.

   a. Rule 4-1.7 provides that a conflict of interest exists when "there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Rule 4-1.7(a)(2).

b. Paragraph 3.1 of the Proposed Agreement would contractually obligate plaintiffs' counsel to "agree to recommend approval of and vigorously support" the Proposed Agreement to their clients. It is my opinion that it is a conflict of interest for an attorney to contract with a client's adversary to give specified advice to the client or to urge the client to take specified action.

c. Paragraph 3.2 of the Proposed Agreement would contractually obligate plaintiffs' counsel to "make every reasonable effort to encourage Putative Class Members to participate and to not opt out" of the Proposed Agreement. It is my opinion that it is a conflict of interest for an attorney to contract with a client's adversary to give specified advice to the client or to urge the client to take specified action.

d. Paragraph 3.2 of the Proposed Agreement also would contractually obligate plaintiffs' counsel to "make all reasonable efforts to enforce the jurisdictional and injunctive provisions of this Amended Settlement Agreement, including joining in any motions or stipulations that may be necessary to stay current or future-filed actions . . ." It is my opinion that it is a conflict of interest for an attorney to contract with a client's adversary to help that adversary enforce a settlement agreement regardless of whether the client may have grounds to not seek or to oppose enforcement.

e. Paragraph 3.3 of the Proposed Agreement specifies that the failure of a party to the Proposed Agreement "to cooperate and assist with regard to settlement as expressly and implicitly contemplated in the [Proposed] Agreement shall constitute a material breach" of the Proposed Agreement. It is my opinion that it is a conflict of interest for an attorney to place himself or herself in a position where the attorney would be violating contractual duties to a client's adversary simply by deciding and recommending, for example, that the best interests of the attorney's client would be served by not cooperating with and assisting the adversary in connection with an aspect of the settlement.

f. It is my opinion that, under the circumstances of this matter, the conflicts of interest faced by plaintiffs' counsel may not ethically be waived. The Comment to Rule 4-1.7 provides in pertinent part that:

> A client may consent to representation notwithstanding a conflict. However, as indicated in subdivision (a)(1) with respect to representation directly adverse to a client and subdivision (a)(2) with respect to material limitations on representation of a client, *when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.* (Emphasis added.)

It is my opinion that a disinterested lawyer would conclude that plaintiffs' counsel could not properly ask their clients to waive conflicts such as these, which strike at the very foundation of the attorney-client relationship.

21. It is my opinion that specific provisions of the Proposed Agreement would place plaintiffs' counsel in the position of violating Florida Rule of Professional Conduct 4-1.1, concerning the duty to provide competent representation.

   a. Rule 4-1.1 requires that a lawyer "shall provide competent representation to a client."

   b. Paragraph 3.1 of the Proposed Agreement would contractually obligate plaintiffs' counsel to "agree to recommend approval of and vigorously support" the Proposed Agreement to their clients. It is my opinion that an attorney would violate the duty of competent representation by contracting with a client's adversary to give specified advice to the client or to urge the client to take specified action. This is especially true where, as in this matter, it is clear that plaintiffs' counsel may not have fully developed the facts of the case. (See paragraph 22., below.)

   c. Paragraph 3.2 of the Proposed Agreement would contractually obligate plaintiffs' counsel to "make every reasonable effort to encourage Putative Class Members to participate and to not opt out" of the Proposed Agreement. It is my opinion that an attorney would violate the duty of competent representation by contracting with a client's adversary to give specified advice to the client or to urge the client to take specified action.

   d. Paragraph 3.2 of the Proposed Agreement also would contractually obligate plaintiffs' counsel to "make all reasonable efforts to enforce the jurisdictional and injunctive provisions of this Amended Settlement Agreement, including joining in any motions or stipulations that may be necessary to stay current or future-filed actions." It is my opinion that it would violate the duty of competent representation for an attorney to contract with a client's adversary to help that adversary enforce a settlement agreement regardless of whether the client may have grounds to not seek or to oppose enforcement.

   e. Paragraph 15 of the Proposed Agreement sets forth a release that includes all claims, even those that the plaintiffs or the class "do not know or suspect to exist in their favor at the time of the signing" of the Proposed Agreement. It is my opinion that plaintiffs' counsel would violate their duty of competent representation with such a release, under the circumstances that indicate that plaintiffs' counsel may not have fully developed the facts of the case. (See paragraph 22., below.)

22. It is my opinion that the provisions of the Proposed Agreement regarding "confirmatory discovery" (see, e.g., paragraphs 4.4, 5.3, 9) do not cure the ethical problems referenced above. Under Rule 4-1.1, plaintiffs' counsel should ascertain whether a specific settlement is in their clients' best interest before recommended that clients agree to it. If anything, the provisions regarding "confirmatory discovery" underscore that plaintiffs' counsel have not fulfilled this ethical obligation. The arbitrary time limit of 60 days provided for in paragraph 5.3 of the Proposed Agreement further underscores the ethical problems that the Proposed Agreement creates for plaintiffs' counsel.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*[signature]*
Timothy P. Chinaris

STATE OF ALABAMA

COUNTY OF MONTGOMERY

The foregoing instrument was acknowledged before me this 11th day of June 2007 by TIMOTHY P. CHINARIS, who is personally known to me or who has produced valid identification and who did take an oath.

*[signature]*
NOTARY

Commission Expires: 9/24/07

# TIMOTHY P. CHINARIS

Post Office Box 210265
Montgomery, Alabama 36121
(334) 386-7214
tchinaris@faulkner.edu

## *EDUCATION*

M.S. in Library and Information Studies, Florida State University, 1996

J.D. With Honors, University of Texas at Austin, 1984

B.S. Cum Laude in Business Administration, Florida State University, 1977

## *EMPLOYMENT*

**Professor of Law and Associate Dean for Information Resources,**
**Faulkner University, Jones School of Law**   Montgomery, Alabama   2005-Present
> Teach courses in professional responsibility, antitrust, and other subjects. Direct law school information resources operations. Faculty responsibilities include committee service, publishing, and speaking on legal ethics and librarianship issues.

**Associate Professor of Law and Assistant Dean of Information Resources,**
**Appalachian School of Law**   Grundy, Virginia   2000-2005
> Taught courses in legal ethics and professional responsibility, criminal procedure, law office practice, and legal process. Directed law school information resources operations. Faculty responsibilities include chairing and serving on various committees.

**Associate Professor of Law and Associate Dean, Information Resources and Technology,**
**Florida Coastal School of Law**   Jacksonville, Florida   1998-2000
> Taught courses in legal ethics and professional responsibility. Directed all law school library, computing, instructional technology, and telecommunications operations. Faculty responsibilities included committee service and advising the school's law review.

**Assistant Professor of Law and Director of Library and Technology Center,**
**Florida Coastal School of Law**   Jacksonville, Florida   1997-1998
> Taught courses in legal ethics and professional responsibility. Directed library operations.

**Ethics Director, The Florida Bar**   Tallahassee, Florida   1989-1997
> Director of program that provided advisory opinions to Florida lawyers on legal ethics issues. Duties included: hiring, training, and supervising staff attorneys; developing and administering budgets; speaking to local, state, and national groups on professional

responsibility issues; counseling the Bar's Board of Governors and various Bar committees; writing for legal publications; and serving on the Florida Bar's Web Site Committee.

**Assistant Ethics Counsel, The Florida Bar**   Tallahassee, Florida   1986-1989
Duties included providing written and oral advisory opinions to Florida lawyers on legal ethics and professional responsibility issues, speaking to various groups, and writing articles on professional responsibility topics.

**Godwin & Carlton, P.C.**   Dallas, Texas   1986
Associate in commercial litigation section of civil practice law firm.

**Texas Court of Appeals**   Dallas, Texas   1985
Research Attorney for Justices Annette Stewart and Ted M. Akin, Fifth Judicial District Court of Appeals. The 13-justice court was the largest appellate court in Texas.

**Texas Court of Appeals**   Dallas, Texas   1984
Briefing Attorney for Justice Ted M. Akin, Fifth Judicial District Court of Appeals.

**Unisys Corporation**   Tallahassee, Florida and Dallas, Texas   1978-81
Branch Financial Manager for worldwide computer equipment and software company.

## *PUBLICATIONS*

Creator and webmaster of legal ethics web site *sunEthics.com* (www.sunethics.com).

Florida Ethics Guide for Legal Assistants and Attorneys Who Utilize Legal Assistants (4th ed., Fla. Bar Continuing Legal Education, 2006).

Chapter on "Ethics, Professionalism, and Discovery" in Virginia Discovery, primarily authored by Jeffrey Kinsler (West Publishing 2005).

Primary drafter, Florida Bar lawyer advertising rules.

"Even Judges Don't Know Everything: A Call for a Presumption of Admissibility for Expert Witness Testimony in Lawyer Disciplinary Proceedings," 36 *St. Mary's Law Journal* 825 (2005).

"More Than the Camel's Nose: The Sarbanes-Oxley Act as Bad News for Lawyers, Clients, and the Public," 31 *Ohio Northern University Law Review* 359 (2005).

"Florida Professional Responsibility in 1999: The Rules of the Game," 24 *Nova Law Review* 199 (Fall 1999), co-authored with Elizabeth Clark Tarbert.

"Professional Responsibility: 1998 Survey of Florida Law," 23 *Nova Law Review* 161 (Fall 1998), co-authored with Elizabeth Clark Tarbert.

"The Ethics of Ethics Consultation: The Consulted Lawyer's Perspective," *The Professional Lawyer*, 1997 Symposium Issue.

"Florida Professional Responsibility Law in 1997," 22 *Nova Law Review* 215 (Fall 1997), co-authored with Elizabeth Clark Tarbert.

"Professional Responsibility: 1996 Survey of Florida Law," 21 *Nova Law Review* 231 (Fall 1996).

"Professional Responsibility in Florida: The Year in Review, 1995" 20 *Nova Law Review* 223 (Fall 1995).

"Ethics As Law: High-Impact Teaching of Legal Ethics," featured on the front page of *law.com*, March 6, 2001.

"The New Advertising Rules in a Nutshell," *The Florida Bar News*, January 15, 2000, p. 4.

"Answers to Frequently-Asked Ethics Questions," 65 *Florida Bar Journal* 49 (January 1991).

Contributing Author, Florida Legal Ethics (1992), and periodic supplements.

## *PROFESSIONAL ACTIVITIES*

Admitted to Practice Law in Florida (1986) and Texas (1984)
Professional Ethics Committee of The Florida Bar (1997-2003; 2006-Present) (Chair, 2002-03)
Florida Bar Attorney-Client Privilege Task Force (2006-Present)
Florida Bar Special Committee on Website Advertising Rules (2005-Present)
Executive Council, Florida Bar Out-of-State Division (2002-Present) (President-elect, 2006-07)
Florida Bar Prepaid Legal Services Committee (2004-Present)
Florida Bar Continuing Legal Education Committee (2002-2003; 2006-2007)
Florida Bar Committee on the Unlicensed Practice of Law (2003-2006) (Vice-chair, 2005-06)
Florida Bar Special Committee to Review ABA Ethics 2000 Model Rules (2002-2005)
Florida Bar Law Related Education Committee (2001-2004)
Professionalism Committee of The Florida Bar (1999-2000)
Virginia State Bar Unauthorized Practice of Law Committee (2003-2005)
Virginia State Bar Multi-Jurisdictional Practice of Law Task Force (2004-2005)
Association of Professional Responsibility Lawyers (1991-Present)
Board of Advisors, Kaplan University School of Undergraduate Legal Studies (2006-Present)
Board of Directors, Holston Associated Libraries (2003-2005)
Board of Trustees, City of Jacksonville Public Library (Chair, Budget Committee) (1999-2000)

Board of Directors, NEFLIN (Northeast Florida Library Information Network) (1999-2000)

Volunteer Reference Librarian, Leroy Collins Leon County Public Library (1993-1997)

AALL (American Association of Law Libraries) (Bylaws Committee, 2006-Present)

ACL (Association of Christian Librarians)

LLAA (Law Libraries Association of Alabama)

SEAALL (Southeastern Association of Law Librarians) (Membership Committee, 2006-Present)

## *PRESENTATIONS*

Presented "Ethics Essentials for Alabama Lawyers" at a continuing legal education seminar in Eufaula, Alabama in March 2007.

Presented "Pioneering with Professionalism: The Journey Begins with Ethics" at the Annual Meeting of the American Association of Law Libraries (AALL) in St. Louis, Missouri in July 2006.

Presented "Recent Developments in Legal Ethics" at the Florida Bar Annual Meeting in Boca Raton, Florida in June 2006.

Spoke on "The 21st Century Academic Law Library" at the Annual Meeting of the Southeastern Association of Law Libraries (SEAALL) in Raleigh, North Carolina in April 2006.

Spoke on "Legal Ethics and the Voting Rights Act of 1965" at a symposium sponsored by Faulkner University, Jones School of Law, Montgomery, Alabama in September 2005.

Presented "Ethics for Prepaid Legal Services Lawyers" at the Florida Bar Annual Meeting in Orlando, Florida in June 2005.

Presented "What's New in Florida Legal Ethics" at the Florida Law Update Seminar, sponsored by Florida Bar General Practice Section, in Orlando, Florida in June 2005.

Presented "Professionalism Begins with Ethics" at the Annual Meeting of the Southeastern Association of Law Libraries (SEAALL) in Montgomery, Alabama, Virginia in April 2005.

Spoke on "Lawyer Advertising: Positive or Negative?" at the Pikeville, Kentucky College Conference on Ethics in April 2005.

Presented "The Sarbanes-Oxley as Bad News for Lawyers, Clients, and the Public" at the Ohio Northern University Law Review Symposium in Ada, Ohio in March 2005.

Presented "The Use of Expert Witness Testimony in Lawyer Disciplinary Proceedings" at the St. Mary's University College of Law Symposium on Legal Malpractice and Professional Responsibility in San Antonio, Texas in February 2005.

Spoke on "The Attorney Discipline Process: Is It Working and Does It Shape Public Opinion Regarding Lawyers?" at the Southeastern Association of Law Schools (SEALS) Annual Meeting at Kiawah Island, South Carolina in August 2004.

Presented "The Sarbanes-Oxley Act and Related Ethical Developments" at the Florida Bar Annual Meeting in Boca Raton, Florida in June 2004.

As keynote speaker, presented "Does an Anormative Approach to Legal Ethics Really Serve the Public?" at the Pikeville, Kentucky College Conference on Ethics in Criminal Justice in April 2004.

Spoke on "Minimize the Risks of Providing Advice to Your Clients" at the Florida Association of Professional Employer Organizations Annual Meeting in Tampa, Florida in April 2004.

Presented "MJP, the ABA, and Recent Developments in Florida Ethics" at the Florida Bar Out of State Practitioners Division seminar in New York in December 2003.

Presented "Ethics and Professionalism in Today's Libraries" at the Virginia Library Association (VLA) Annual Meeting in Hot Springs, Virginia in November 2003.

Presented "MJP and Other Recent Developments in Florida Legal Ethics" at the Florida Bar Out of State Practitioners Division Fall seminar in Chicago, Illinois in October 2003.

Presented "Hot Ethical Topics for Business Lawyers" at the Florida Bar Business Law Section Annual Retreat in Palm Beach, Florida in August 2003.

Presented "Ethical Issues in Online Legal Research" at the Virginia State Bar Annual Meeting in Virginia Beach, Virginia in June 2003.

Spoke on "Insurance Defense Ethics" at the Florida Bar Annual Meeting in Orlando, Florida in June 2003.

Presented "Ready or Not: Changes on the Ethical Horizon" to the St. Andrews Bay Inns of Court in Panama City, Florida in March 2003.

Presented "Ethics and Professionalism in Law Libraries" at the Annual Meeting of the Virginia Association of Law Libraries (VALL) in Richmond, Virginia in November 2002.

Spoke on "Ethics for Trial Lawyers" at a Virginia Trial Lawyers Association (VTLA) seminar in Roanoke, Virginia in November 2002.

Discussed "Trust Accounting and Succession Planning for Virginia Lawyers" at an American Liability Protection Society seminar in Grundy, Virginia in September 2002.

Spoke on "Spotting Conflicts of Interest" at the Florida Bar Masters Seminar on Ethics in Boca Raton, Florida in June 2002.

Presented "Hot Topics in Legal Ethics" at the Florida Law Update Seminar, sponsored by Florida Bar General Practice Section, in Boca Raton, Florida in June 2002.

Discussed "Preventing Legal Malpractice Claims and Ethics Complaints in Business Transactions and General Practice" at a risk management conference sponsored by American National Lawyers Insurance Reciprocal in Grundy, Virginia in May 2002.

Spoke on "Ethics for Corporate Counsel" at the Spring Seminar of the Florida Chapter of the American Corporate Counsel Association (ACCA) in Fort Lauderdale, Florida in May 2002.

Spoke on "Law Librarians and the Unauthorized Practice of Law" at the Southeastern Association of Law Librarians (SEAALL) Annual Meeting in Fort Lauderdale, Florida in April 2002.

Presented "Unethical Conduct: Next Stop, Malpractice Liability" to the Kingsport, Tennessee Bar Association in January 2002.

Spoke on "The Ethical Practice of Criminal Defense" to the Virginia College of Criminal Defense Attorneys in Roanoke, Virginia, in October 2001.

Spoke on "The Intersection of Ethics, Professionalism, and Malpractice Liability" at the Florida Bar Masters Seminar on Ethics in Orlando, Florida in June 2001.

Presented "The Top Ten Ethics Issues of the Year" at the Florida Law Update Seminar, sponsored by Florida Bar General Practice Section, in Orlando in June 2001.

Co-presenter with John Berry, Chair of the ABA Professionalism Commission, on "The Future of the Legal Profession," at Appalachian School of Law in November 2000.

Spoke on "Ethical Issues in the Taking and Use of Depositions" at a Jacksonville, Florida continuing legal education seminar in July 2000.

Presented "The Internet and Attorney Ethics" at the annual Amelia Island resort seminar sponsored by the Jacksonville Bar Association in June 2000.

Discussed "Electronic Ethics Issues" at the American Bar Association General Practice Section Spring Meeting in May 2000.

Spoke on "Practical Legal Research and Analysis" at a Jacksonville seminar for paralegals in November 1999.

Presented "Lawyers Online: Do Ethics and Image Mix?" at the Williams Inns of Court in Orlando in October 1999.

Featured luncheon speaker on the topic of "Professionalism in the Information Age" at the annual Amelia Island resort seminar sponsored by the Jacksonville Bar Association in June 1999.

Presented "Recent Ethical Developments" at the "Hot Topics in Commercial Litigation" seminar sponsored by the Florida Bar Business Law Section in April 1999.

Spoke on "Ethics in the Attorney-Client Relationship" and "Substance Abuse in the Practice of Law" at The Florida Bar's "Practicing With Professionalism" program in November 1998.

Presented "Why Don't More People Like Us, and What Should We Do About It? Another View of Professional Ethics and Professionalism," at the Jacksonville Inns of Court in September 1998.

Spoke on "Ethics for Business Litigators" at the 1998 Florida Bar Business Litigation Certification Examination Review Course in Orlando, Florida.

Participated in a panel discussion on "Ethical Considerations in Bankruptcy Practice" at the December 1997 meeting of the Tampa Bay Bankruptcy Bar Association.

Spoke on "The Ethics of Ethics Consultation" at the 1997 ABA National Conference on Professional Responsibility, held in Naples, Florida.

At the invitation of the Supreme Court of Kentucky, addressed the 1996 Kentucky Bar Association Annual Convention on "Lawyer Advertising Law and Regulation."

Participated in a panel discussion on "The Ethics and Expenses of Undue Influence" at the 1996 Attorney Trust Officer Liaison Conference in Palm Beach, Florida.

Addressed the 1994 ABA National Conference on Professional Responsibility on the practical aspects of "Operating a State Bar Ethics Opinion and Information Service."

Spoke to the 1993 Florida Conference of County Court Judges on "What You Can Do About Attorneys' Professional Conduct."

Addressed the 1992 Annual Meeting of the Association of Professional Responsibility Lawyers on the subject of "New and Controversial Advisory Opinions."

Presented "10 Common Sense Rules to Guide You Through the Ethical Minefields of the 1990's" during a 1991 ethics seminar sponsored by Stetson University College of Law.

Spoke on "Nonlawyer Involvement in the Practice of Law" at the 1989 ABA National Conference on Professional Responsibility in Chicago.